This is an appeal from a summary judgment in favor of defendant Aetna Life and Casualty Company, Inc. (Aetna).[1] The Circuit Court for Madison County granted summary judgment on the causes of action alleged in the complaint, breach of contract and bad faith refusal to pay a claim.
The sole issue raised by plaintiff Madison County Sheriff's Posse, Inc. (Sheriff's Posse) on appeal is whether it was reversible error for the trial court to grant Aetna's motion for summary judgment. It is our opinion that it was not, and we affirm.
The following facts provide the background for this case:
Sheriff's Posse is a non-profit community service organization. Its purposes are: (1) to serve the sheriff's department at its request in carrying out routine duties; and (2) to raise money for certain charities through putting on horse shows. In 1978, at the time of the events which gave rise to this suit, the Sheriff's Posse, by way of its membership in the Horseman's United Association, Inc., was covered by a liability insurance policy issued by Aetna. The policy contained the following:
EXCLUSION
(Athletic Participants)
 It is agreed that with respect to operations described below or designated in the policy as subject to this endorsement, the insurance does not apply to BODILY INJURY to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the NAMED INSURED.
On May 26, 1978, the Sheriff's Posse was conducting a horse show in Huntsville, Alabama. That evening Mitchell Dorning, a minor, was injured when the horse he was riding tripped over a disc harrow in high grass. On May 25, 1979, a lawsuit was filed against the Sheriff's Posse by Mitchell's father on behalf of Mitchell. The complaint stated in pertinent part:
 1. On or about the 26th day of May, 1978, Plaintiff, Mitchell Dorning was an invitee on property owned by Defendant, William J. Hale, and leased by Defendant, Madison County Sheriff's Posse.
 2. On that date, defendant, Madison County Sheriff's Posse, was conducting a rodeo in which Plaintiff was a participant.
 3. On that date, defendant, Madison County Sheriff's Posse, and Defendant, William J. Hale, negligently placed a farm implement in an unlighted area in which they knew or should have known that Plaintiff would be riding his horse.
 4. As a proximate result of said negligence, Plaintiff's horse fell over said farm implement causing damage to the horse and causing Plaintiff to break his leg.
A claim was made upon Aetna by Sheriff's Posse for a defense, and a copy of the complaint was forwarded to it. By letter of March 4, 1980, the regional supervisor for Aetna acknowledged receipt of the complaint, cited the above-quoted exclusion, and denied coverage. The Sheriff's Posse then hired an attorney, and, on March 20, 1981, settled the claim with Mitchell's father for $5,000.00.
The depositions and answers to interrogatories which had been obtained prior to that date indicated that Mitchell had registered *Page 1389 
as a participant in the rodeo on May 25, 1979, and had already ridden in one event. While another event was in progress, Mitchell mounted a horse which he planned to ride in a later event, to "warm her up." He was instructed by a man in a sheriff's uniform to ride his horse in an area away from where children were playing. This he did. However, this area was unlighted. When Mitchell heard a voice over the public address system announcing the next event in which he was to ride, he came "loping" back toward the entrance gate. It was during this ride back to the gate that Mitchell's horse stumbled over the farm implement, causing his injury.
On April 13, 1981, the Sheriff's Posse filed the suit which is the basis of the appeal now before us. Initially, Sheriff's Posse filed a breach of contract action seeking recovery of the $5,000.00, plus $2,500.00 in attorneys' fees. Subsequently, it amended the complaint to add a bad faith count.
On April 28, 1982, Aetna moved for summary judgment based on the pleadings, the insurance policy with the exclusion, the letter from Aetna's regional supervisor to Sheriff's Posse, the depositions of Mitchell Dorning and Leamon Satterfield taken in the prior action, and interrogatories to the plaintiff and plaintiff's answers obtained in the prior action. The Sheriff's Posse answered the motion with an affidavit of Mitchell Dorning. The motion was argued orally before the trial court, and on June 14, 1982, the court granted Aetna's motion for summary judgment.
Rule 56 (c), ARCP, sets out the standard for summary judgments in Alabama.
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
The committee comments to this rule state:
 This test must be read in context with the Alabama "scintilla evidence" rule, which these rules do not disturb. See Rule 50. Thus, if there is a scintilla of evidence supporting the position of the party against whom the motion is made, so that at a trial he would be entitled to go to the jury, summary judgment cannot be granted.
In addition, this court has ruled that all reasonable inferences from the facts are viewed most favorably to the non-moving party. Bryant v. Morley, 406 So.2d 394 (Ala. 1981).
We discuss the granting of summary judgment first with relation to the claim of breach of contract.
There is clearly no issue of material fact in this case, as both parties agree on the events of the night that Mitchell Dorning was injured. The dispute is as to whether Mitchell Dorning was practicing for or participating in the rodeo at the time of the accident. The Sheriff's Posse contends that he was not. In the affidavit filed in opposition to the motion for summary judgment, Mitchell Dorning states: "[A]t the time that my accident occurred, I was neither practicing nor participating in any of the ongoing activities of the horse show that evening." However, this is a mere assertion, accompanied by no "facts as would be admissible in evidence" (Rule 56 (e), ARCP) to support it. On the other hand, it is undisputed that he was a registered participant in the rodeo, had already ridden in one event, and was preparing to ride in another. A number of times in his deposition, Mitchell testified that he was warming his horse up for the next event. He stated that he continued to "warm her up" until the pole event was announced, and then he proceeded toward the entrance to the ring.
This court has held that ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist. Alabama Farm Bureau Mutual CasualtyInsurance Co. v. Goodman, 279 Ala. 538, 188 So.2d 268 (1966). In the policy before us, the language is clear and unambiguous, excluding personal injury "to any person while practicing for or participating in any contest or exhibition of an *Page 1390 
athletic or sports nature. . . ." We find not a scintilla of evidence that Mitchell Dorning was doing anything other than practicing for or participating in the rodeo. Therefore, we find that the accident was excluded from coverage under the policy, and that summary judgment in favor of Aetna was appropriate on the breach of contract count.
We now turn to whether summary judgment was appropriate on plaintiff's count of bad faith failure to pay an insurance claim. In Chavers v. National Security Fire Casualty Co.,405 So.2d 1, (Ala. 1981), this court first set forth the requirements of a claim of a bad faith refusal to pay a claim, holding that an insurance contract contains a duty implied in law of good faith and fair dealing. There, we stated that bad faith is the intentional failure by the insurer to perform this duty implied in law. Chavers, supra, 405 So.2d at 5. More recently, in National Security Fire Casualty Company v.Bowen, 417 So.2d 179 (Ala. 1982), we stated:
 [T]he plaintiff in a "bad faith refusal" case has the burden of proving:
 (a) an insurance contract between the parties and a breach thereof by the defendant;
 (b) an intentional refusal to pay the insured's claim;
 (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 The "debatable reason" under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, 405 So.2d 134 (1981).
Bowen, supra, 417 So.2d at 183.
Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made. National Savings Life Insurance Companyv. Dutton, 419 So.2d 1357 (Ala. 1982). In the instant case, Aetna had before it a complaint which stated:
 2. On that date, defendant, Madison County Sheriff's Posse, was conducting a rodeo in which Plaintiff was a participant.
 3. On that date, defendant, Madison County Sheriff's Posse, and Defendant, William J. Hale, negligently placed a farm implement in an unlighted area in which they knew or should have known that Plaintiff would be riding his horse.
This obviously provided Aetna with a reasonably legitimate or arguable reason for believing that the claim fell under the exclusion in the policy, and, thus, for refusing to pay. SeeBowen, supra.
This court has noted that the burden of showing the elements of a bad faith claim is a heavy one for the plaintiffs. InDutton we said:
 In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a *Page 1391 
fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.
National Savings Life Insurance Co. v. Dutton, 419 So.2d at 1362.
In the instant case, the plaintiff has not been able to support his contract claim. Therefore, the plaintiff's tort claim for bad faith refusal to pay an insurance claim cannot survive a motion for summary judgment. The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] This suit, as originally filed, named as defendants Horseman's United Association, Inc., Trans-America Insurance Company, and fictitious parties, Aetna being added later by amendment. Both of the original named defendants were dismissed from the suit, by virtue of the court's granting their motion to dismiss and motion for summary judgment, respectively. This appeal is taken from the judgment in favor of Aetna.
 *Page 436