[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 228 
Daniel L. Koch and Roberta P. Koch filed a multiple-count complaint against State Farm Fire and Casualty Company and its agent, James Robinson (both hereinafter referred to as "State Farm"), alleging breach of contract,[1] bad faith refusal to pay an insurance claim, and fraudulent concealment,[2] relating to damage to an exterior wall;[3] and breach of contract, bad faith refusal to pay an insurance claim, and misrepresentation, relating to damage to the kitchen floor. The trial court directed verdicts in favor of State Farm on all counts. The Koches appeal from the resulting judgment. We affirm.
The standard of review for a directed verdict and a summary judgment are essentially the same. Kizziah v. Golden Rule Ins.Co., 536 So.2d 943 (Ala. 1989). This action was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12;Robichaux v. AFBIC Development Co., 551 So.2d 1017 (Ala. 1989);Perry v. Hancock Fabrics, Inc., 541 So.2d 521 (Ala. 1989). In actions filed after June 11, 1987, a directed verdict for the defendant would be proper when the plaintiff has failed to present "substantial evidence" as to each element of his cause of action. See Watters v. Lawrence County, 551 So.2d 1011 (Ala. 1989); see, also, § 12-21-12(d).
For purposes of clarity, we will divide the Koches' claims into two categories: (1) causes of action involving claims based on damage to an exterior wall of the Koches' house and (2) causes of action involving an insurance claim based on damage to the kitchen floor of the Koches' house.
 Claims For Damage To An Exterior Wall
In 1978, the Koches moved into their present house, retaining the homeowner's coverage with State Farm that they had obtained on their previous house. Following Hurricane Frederic in 1979, the north interior wall of their house suffered water damage, for which they filed a claim with, and were paid by, State Farm, less the deductible. In 1981, this wall again suffered damage from "windblown rain," evidenced by water stains on the inside of the wall. State Farm again paid the Koches' claim, less the deductible. In an effort to determine the source of the water damage to the interior of the house, State Farm retained Thompson Engineering Testing Company ("Thompson") to inspect the Koches' house "to determine if moisture intrusion which had stained several areas throughout the residence was caused by wind, natural causes or by construction or design deficiencies." Thompson visually inspected the Koches' house and rendered a report to State Farm, listing several "possibilities" for leaks (as shown in certain photographs) and made several recommendations for preventing water intrusion. Upon receiving a copy of the report from Thompson, the Koches hired a contractor to make the recommended repairs. No evidence was presented that State Farm authorized Thompson to send the Koches the report, nor was there any evidence that State Farm had any contact with the Koches concerning the report from Thompson.
In 1985, State Farm again received and paid a claim, less the deductible, filed by the Koches for damage to the interior wall caused by "windblown water" from Hurricane Elena. *Page 229 
In the spring of 1987, the Koches noticed that an exterior wall (away from the previously damaged interior wall) needed repair, and they retained Mike Owens, a contractor, to undertake the necessary repairs. Although not initially hired for the purpose, Owens discovered water intrusion on the inside of the interior north wall and, upon removing the redwood siding of the house, Owens found extensive moisture damage to the substructure of the interior north wall from the base of the wall almost to the roof; the wood was rotting or deteriorating. Thereafter, the Koches filed a claim under their homeowner's policy for water damage to the exterior wall of their house. State Farm denied coverage to the exterior wall but did pay, as it had before, for water stain to the interior north wall.
The Koches contend that the water that had been driven by hurricane-force winds through the exterior wall in 1979, 1981, and 1985, causing damage to the interior wall for which State Farm paid the claim, remained undetected, and, thus, remaining in the dark, unventilated space between the interior and the exterior wall, resulted in substantial damage to the exterior wall.
 A. Breach of Contract
In their brief, the Koches argue that State Farm breached its contract by failing to pay damages allegedly caused by water driven through the exterior of the wall by hurricane-force winds. However, a thorough review of the record reveals that the last amended complaint filed by the Koches did not contain a claim for breach of contract relating to the wall damage; rather, Count I alleged bad faith and Count II alleged fraudulent concealment. The Koches' attorney admitted at trial that the amended complaint governed the lawsuit. Thus, State Farm argues that all of the evidence that it introduced without objection concerning the exterior wall damage claim was directly relevant to and admissible under the bad faith claim; that the introduction of such evidence did not relate exclusively to some unstated breach of contract claim, but was offered to rebut a necessary element of a bad faith claim; that the pleadings therefore cannot be deemed to have been amended by consent under Rule 15(b); and thus, that the issue of State Farm's contract liability was never tried by the implied consent of the parties.
 "When a party contends that an issue was tried by express or implied consent and the evidence on that issue is also relevant to the issue expressly litigated, there is nothing to indicate that a new issue was raised at trial, and the pleadings are not deemed amended under Rule 15(b)."
McCollum v. Reeves, 521 So.2d 13, 17 (Ala. 1987) (quoting Wright Miller, Federal Practice and Procedure: Civil, § 1493 (1971)). We agree. Therefore, the breach of contract claim is not at issue.
 B. Bad Faith
Bad faith is the intentional failure by an insurer to perform the duty of good faith and fair dealing implied by law. In order to prevail on a cause of action for bad faith refusal to pay an insurance claim, the Koches had the burden of proving the following:
 " '(a) an insurance contract between the parties and a breach thereof by [State Farm];
 " '(b) an intentional refusal to pay [the Koches'] claim;
 " '(c) the absence of a reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);[4]
 " '(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 " '(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 " 'In short, [the Koches] must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment *Page 230 
without any reasonable ground for dispute. Or, stated differently, [the Koches] must show that [State Farm] had no legal or factual defense to the insurance claim.' [Quoting National Security Fire Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1979) (emphasis in Bowen).]
". . . .
 " 'If any one of the reasons for denial of coverage is at least "arguable," this Court need not look any further.' McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co., 437 So.2d 86, 91 (Ala. 1983)."
King v. National Foundation Life Ins. Co., 541 So.2d 502,504-05 (Ala. 1989); see, also, National Security Fire Casualty Co. v. Bowen, 417 So.2d 179 (Ala. 1982).
It is undisputed that the policy at issue was in full force and effect in 1987 when the damage to the exterior wall and to the interior wall was discovered and reported to State Farm. The pertinent portions of the insurance policy are as follows:
"SECTION I — LOSSES INSURED
"COVERAGE A — DWELLING
 "We insure for accidental direct physical loss to the property described in Coverage A except as provided in SECTION I — LOSSES NOT INSURED.
-------
"SECTION I — LOSSES NOT INSURED
 "1. We do not insure for loss to the property described in Coverage A either consisting of, or directly and immediately caused by, one or more of the following:
". . . .
 "e. leakage or seepage of water or steam unless sudden or accidental from a:
 "(1) heating or air conditioning or automatic fire protective sprinkler system;
"(2) household appliance; or
 "(3) plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture;
". . . .
 "f. wear, tear, marring, deterioration, inherent vice, latent defect and mechanical breakdown;
"g. rust, mold, wet or dry rot;
". . . .
 "2. We do not insure under any coverage for loss (including collapse of an insured building or part of a building) which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:
". . . .
"c. Water Damage, meaning:
"(1) . . . whether or not driven by wind; . . .
 "3. We do not insure under any coverage for loss consisting of one or more of the items below:
". . . .
 b. defect, weakness, inadequacy, fault or unsoundness in:
". . . .
 "(2) design, specifications, workmanship, construction, grading, compaction;
 "(3) materials used in construction or repair. . . ." (Emphasis added.)
From a review of the record, it appears that after a reasonable investigation of the Koches' claim, State Farm determined that the damage to the exterior wall for which the Koches seek recovery was due to rot and deterioration, a loss clearly excluded under the express provisions of the policy, as stated above. Both State Farm and the Koches testified that this was the condition of the wall substructure at the time the damage was discovered in 1987. Although the Koches allege several theories for the damage, the specific cause of the rotting and deterioration, whether leakage or seepage of water from a defective condition, from leakage around the chimney or from *Page 231 
improperly installed flashing around a chimney, or from windblown rains, etc., makes no difference to the coverage issue. The overall structure of the policy provides coverage for damage caused by water intrusion that is immediate and accidental, but excludes coverage for losses that result from long periods of decay and deterioration. Based on the foregoing, State Farm had an arguable, debatable basis for denying coverage for the wall claim resulting from the rotting and deteriorated condition of the wall.
Furthermore, to present a prima facie case of bad faith in a "normal" case, the offered proof must demonstrate that the plaintiff is entitled to a directed verdict on the contract claim. See Kizziah v. Golden Rule Insurance Co., supra; see, also, National Savings Life Insurance Co. v. Dutton,419 So.2d 1357 (Ala. 1982). The present case falls within the "ordinary" or "normal" case described in National Savings Life InsuranceCo. v. Dutton, supra, and is not an "extraordinary" case, such as Continental Assurance Co. v. Kountz, 461 So.2d 802 (Ala. 1984). Therefore, because the Koches would not have been entitled to a directed verdict on a contract claim, had they made such a claim, their bad faith claim must fail. See Hilleyv. Allstate Insurance Co., 562 So.2d 184 (Ala. 1989).
Based on the foregoing, we conclude that the trial court properly directed a verdict on the Koches' bad faith claim.
 C. Negligent Inspection
The Koches contend that, when State Farm voluntarily undertook to retain Thompson to conduct a visual inspection of their house, it assumed the duty of performing the inspection in a competent manner; and that, because the inspection did not result in the discovery and determination of the source of the water intrusion and of the damage resulting to the exterior wall, State Farm is liable for the resulting damage.
A review of Count II of the Koches' last amended complaint, which governs this suit, reveals an absence of allegations of negligent inspection; rather, the complaint asserts an obligation to disclose defects that existed in the Koches' house and a concealment of these defects, done maliciously and with the "intent to injure the plaintiffs." It does not state a claim based on negligent inspection. Thus, State Farm contends that any evidence introduced at trial concerning the inspection of the premises by Thompson in 1981 and the alleged resulting failure to disclose or detect the defects at that time was admissible to negate the cause of action based on fraudulent concealment. The introduction of evidence relating to the 1981 inspection, without objection, cannot be used now to suggest that an unstated claim for negligent inspection was tried by the implied consent of the parties. See McCollum v.Reeves, supra.
However, there appears to be some confusion in the record as to whether the trial court directed a verdict on that issue rather than on the issue of fraudulent concealment, which was the cause of action pleaded. In any event, if negligent inspection was at issue, State Farm contends that any claim of negligence filed by the Koches in April 1988 would be barred by the statute of limitations. A negligence cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of damages is apparent at the time of the first legal injury. Home InsuranceCo. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468
(1973); see, also, Armstrong v. Life Ins. Co. of Virginia,454 So.2d 1377 (Ala. 1984), overruled on other grounds, Hickox v.Stover, 551 So.2d 259 (Ala. 1989). If we were even to consider the possibility of negligence on the part of State Farm, we would have to conclude that any damage for which State Farm could be liable, arising out of the inspection of the premises in 1981, would have occurred in 1985, when there appeared the water damage to the interior wall, for which State Farm paid a claim. In 1985, the applicable statute of limitations allowed one year in which to sue; therefore, a claim filed in 1988 for damage occurring in 1985 is barred by the then applicable one-year statute of limitations. *Page 232 
See Ala. Code 1975, § 6-2-39. Based on the foregoing, we conclude that the Koches' claim for negligent inspection is barred by the statute of limitations.
Therefore, we hold that the trial court could have properly directed a verdict in favor of State Farm as to the negligent inspection claim.
 Claims for Damage to the Kitchen Floor
In August 1987, the Koches filed a claim with State Farm based on damage to the vinyl floor in their kitchen. Robinson visually inspected the damage, taking photographs of the floor and taking measurements to determine the amount of vinyl flooring needed for a repair. Thereafter, Robinson estimated the approximate replacement cost of the damaged floor (based upon his 16 years of personal experience), without consulting price books or manuals. The following day, Robinson sent the Koches a check for $248.97 (the estimated replacement cost of $348.97, less the $100 deductible). Four to six weeks later, the Koches notified Robinson that they thought the amount was insufficient to replace the floor. Robinson testified that he told the Koches to get an estimate to determine if the amount of the check that he had sent them to replace the damaged floor was inadequate. The Koches, on the other hand, allege that Robinson told them to have the floor repaired and send him the bill and that he would pay it.
Ms. Koch testified that the original floor was of the best quality flooring available at that time. She further testified that when she went to the seller and installer of the original floor to purchase the replacement flooring and found that the original flooring had been discontinued, she again requested the best quality flooring available at that time. Thereafter, in February 1988, the Koches submitted a bill to Robinson for installation of the new floor in the amount of $731.91. Upon receipt of the bill, because of the discrepancy between the cost of the new flooring and Robinson's estimate, Robinson contacted another flooring contractor to check on the price to replace the Koches' flooring. Robinson confirmed that the exact pattern of the Koches' original flooring was no longer in production, but he discovered that the manufacturer of that particular flooring had replaced it with a floor covering under a different name. By using the cost of the replacement product, Robinson adjusted his earlier estimate, increasing it by $189.75; and in March 1988, he forwarded the Koches a check for this additional amount.[5] Including this second check, the total amount paid by State Farm to the Koches totalled $438.72 ($538.72 less the $100 deductible) — $193.19 less than the total expenses the Koches had incurred for replacing their floor. Because it was less, the Koches brought claims alleging breach of contract, bad faith, and misrepresentation.
 A. Breach of Contract
It is undisputed that the policy at issue covered "accidental direct physical loss to [personal property]" and that covered property losses would be settled on a replacement cost basis.[6]
The pertinent portion of the policy reads as follows:
 "3. Loss Settlement. Covered property losses are settled as follows:
 "(a) Personal property and structures that are not buildings at actual cash value at the time of the loss. We will not pay an amount exceeding that necessary to repair or replace."
State Farm offered evidence that the cost to replace the original floor with a comparable floor was $538.72 — the total of the two checks that State Farm sent to the Koches ($438.72) plus the $100 deductible. This evidence demonstrates that, upon being notified that the Koches' bill for the cost of the replaced flooring was greater than Robinson's original estimate and payment, Robinson investigated the replacement cost of the Koches' flooring and then *Page 233 
sent the Koches another check for the difference between his original estimate and his revised estimate of the replacement cost. Pursuant to the express terms of the policy, State Farm was under no obligation to pay any more than replacement cost.
The Koches presented no evidence that the $731.91 cost of the vinyl flooring that Ms. Koch ordered and had installed was not greater than the "replacement cost" — i.e., greater than the cost of flooring comparable to that which was damaged — which State Farm had agreed under its policy to pay.
Thus, State Farm presented a prima facie showing that the amount it paid to the Koches was the "replacement cost" and that it was entitled to a verdict as a matter of law. Therefore, it was incumbent upon the Koches to present substantial evidence to rebut that showing. They failed to do so. Based on the foregoing, we hold that the trial court properly directed a verdict in favor of State Farm on the breach of contract claim.
 B. Bad Faith
In a "normal" case, such as this one, to prevail on a claim based on an alleged bad faith refusal to pay, the plaintiff must be entitled to a directed verdict on the underlying contract claim. Kizziah v. Golden Rule Insurance Co., supra;Payne v. Nationwide Mutual Insurance Co., 456 So.2d 34 (Ala. 1984).
Having concluded that the trial court properly directed a verdict as to the Koches' breach of contract claim with regard to the cost of replacing the damaged floor, we must also approve the directed verdict as to the Koches' bad faith claim with regard to the cost of replacing that damaged floor. SeeHilley v. Allstate Insurance Co., supra; see, also, Stricklandv. Alabama Farm Bureau Mutual Cas. Ins. Co., 502 So.2d 349
(Ala. 1987); Madison County Sheriff's Posse, Inc. v. Horseman'sUnited Ass'n, Inc., 434 So.2d 1387 (Ala. 1983).
 C. Misrepresentation
The Koches allege that Robinson told them to submit the bill for repairs to the floor to State Farm and that "it would be paid," but that Robinson refused to pay the claim. Clearly the Koches' fraud claim is predicated upon Robinson's alleged misrepresentation concerning his intent to perform under the contract. In order to have the fraud claim submitted to the jury, the Koches had to present sufficient, i.e., "substantial," evidence of the basic elements of fraudulent misrepresentation (Ala. Code 1975, § 6-5-101), and they must prove that Robinson intended "at the time of the alleged misrepresentation, not to perform" and "made the representation with a present intent to deceive." See Watters v. LawrenceCounty Commission, supra; see, also, Selby v. Quartrol Corp.,514 So.2d 1294, 1297 (Ala. 1984); Coastal Concrete Co. v.Patterson, 503 So.2d 824 (Ala. 1987); and RussellvilleProduction Credit Association v. Frost, 484 So.2d 1084 (Ala. 1986).
 " 'The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). . . .' "
Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala. 1987) (quoting Purcell Co. v. Spriggs Enterprises, Inc.,431 So.2d 515, 519 (Ala. 1983)).
State Farm argues that the Koches offered no proof that, at the time of the alleged misrepresentation, Robinson and/or State Farm did not intend to pay the replacement cost of the flooring, but rather that all reasonable inferences to be drawn from the evidence lead to the conclusion *Page 234 
that State Farm and Robinson had every intention of abiding by the policy provisions and of adjusting the claim based on replacement cost. We are persuaded by this argument; and, therefore, we conclude that the trial court properly directed a verdict in favor of State Farm and Robinson on the Koches' claim of misrepresentation.
The judgment based on the directed verdicts for the defendants is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Although breach of contract was a cause of action pleaded in the original complaint, the final amended complaint did not contain a cause of action for breach of contract.
[2] While the complaint and amended complaints referred to a "fraudulent concealment" claim, the parties seem to have treated this claim as a claim based on "negligent inspection."
[3] Although the area that was actually damaged was the substructure of the north interior wall, this area is referred to in the complaint and briefs as the exterior wall.
[4] A debatable reason means an arguable reason; a reason that is open to dispute or question. See Chavers v. National SecurityFire Insurance Co., 405 So.2d 1 (Ala. 1981); see, also Woodwardv. Champion Ins. Co., 548 So.2d 1026 (Ala. 1986).
[5] The Koches cashed both checks sent to them for the vinyl floor claim.
[6] It is undisputed that the Koches understood that their policy covering their floor claim allowed replacement cost.