**B. Stephen SCHLOSS, Plaintiff,**

v.

**THE CINCINNATI INSURANCE COMPANY, Pacific Indemnity Company, and Vigilant Insurance Company, Defendants.**

**No. Civ.A. 98–A–1083–N.**

United States District Court,
M.D. Alabama,
Northern Division.

June 29, 1999.

---

Benjamin L. Locklar, Randy A. Myers, Montgomery, AL, for plaintiff.

Chadwick F. Morriss, Montgomery, AL, John D. Herndon, Birmingham, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on cross motions for summary judgment. Defendants Pacific Indemnity ("Pacific")[1] and

---

1. The Chubb Insurance Group, also referred to by the parties as Chubb and Sons, Inc., was originally named as a defendant. Schloss' First Amended Complaint substituted Pacific for Chubb. Plaintiff's Second Amended Complaint added Vigilant Insurance Company ("Vigilant"), a sister company of Pacific, as a Defendant. Although Vigilant has not filed a separate Motion for Summary Judgment, the parties agreed at the pre-trial hearing that Pacific's Motion for Summary Judgment would cover the policy which was issued by Vigilant.

The Cincinnati Insurance Company ("Cincinnati") (collectively the "Defendants") request summary judgment (Doc. # s 22 and 25, respectively), and Plaintiff B. Stephen Schloss ("Schloss") requests that the court grant him a partial summary judgment on the issue of liability (Doc. # 28).

Count I of Schloss' Complaint, as amended, requests a declaration that, pursuant to the homeowner's insurance policies issued by the Defendants to Schloss, the Defendants are liable for the costs of certain repairs to his home. Count II alleges that the Defendants' denial of coverage for the costs of the repairs is a breach of the insurance contracts. Schloss is a resident of Alabama. The Defendants are foreign insurance companies which are qualified to conduct business in Alabama and which do conduct business by agent throughout Alabama. Because the amount in controversy exceeds $75,000, exclusive of interest and costs, the court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

## II. *STANDARD FOR CROSS MOTIONS FOR SUMMARY JUDGMENT*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing

there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In resolving the present cross-Motions for Summary Judgment the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions of the parties establish the following facts:

The Plaintiff, Steve Schloss ("Schloss") and his wife purchased a home in Montgomery, Alabama in 1986. Between 1986 and 1988, Schloss had substantial renovation done to the home. This renovation

included the installation of an EIFS system[2] and a clay tile roof.

During the renovation stage, the home was covered by a policy of insurance which was issued by Vigilant Insurance Company. This policy remained in effect until May 1990. Between May 1990 and 1995, the home was insured by a policy issued by Vigilant and then by Pacific Indemnity. From May 1995 to May 1996, the home was insured by a policy issued by Pacific Indemnity. From May 1996 to May 1999, the home was insured by a policy issued by Cincinnati Insurance Company.

In 1997, during some repairs to the home, it was discovered that the home had suffered significant rot damage to its wooden stud structure, with repair costs exceeding $500,000. The rot occurred because of water allegedly due to·faulty installation of the roof and the EIFS system and/or faulty design. The repairs included removing and replacing the EIFS and the roof of the home.

Schloss notified the Defendants of the problems with the house in December of 1997 and filed claims to recover the costs of the necessary repairs pursuant to the policies. The Defendants hired engineers to inspect the home to determine the cause of the damage. The Defendants subsequently denied coverage. Schloss claims that he has complied with all of the terms of his contracts and that the Defendants have breached those contracts by refusing to pay the claims submitted by Schloss to the carriers.

## IV. *DISCUSSION*

Schloss contends that the homeowners insurance policies issued by the Defendants should cover the damage caused to his home by the faulty roof and EIFS. The Defendants argue that, pursuant to the language of their respective insurance policies, they are not liable for any of the costs to repair Schloss' home. Because there are different policies at issue, and the De-

fendants have separately moved for summary judgment, and the Plaintiff has also moved for summary judgment, the court will address the coverage issues under each of the policies separately.

Before addressing the specific arguments and interpretations made by the parties, however, the court first notes that Alabama law governs the interpretation of the insurance contracts at issue. In construing the language of an insurance policy, the language should be given the meaning that a person of ordinary intelligence would reasonably think the language had. *National Union Fire Ins. Co. v. City of Leeds*, 530 So.2d 205, 207 (Ala.1988). Because the language of insurance policies is framed by the insurer, the courts construe such language favorably to the insured. *See Northland Ins. Cos. v. City of Montgomery*, 418 So.2d 881, 884 (Ala. 1982). An unambiguous exclusion in an insurance policy will be enforced according to its terms. *Cook v. Aetna Ins. Co.*, 661 So.2d 1169, 1170 (Ala.1995). When "ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Educ.*, 540 So.2d 745, 748 (Ala.1989). The mere fact that a plaintiff contends for a different construction of the policy does not, however, mean that the language is ambiguous. *Upton v. Mississippi Valley Title Ins. Co.*, 469 So.2d 548 (Ala.1985). It is in light of these principles that the court will address the particular arguments of the parties.

### A. Policies Issued by Vigilant and Pacific

Pacific argues that although the policies issued by it and by Vigilant are all risk policies, there are exclusions which keep the losses suffered by Schloss from being covered by the policy. One exclusion to

---

**2.** EIFS is an acronym for "Exterior Insula- tion Finishing System."

which Pacific points is the exclusion for loss caused by rot.

The policy in effect from May 1986 until May 1990, issued by Vigilant, stated that it does not cover "wear and tear, marring, deterioration, inherent vice, latent defect, mechanical breakdown, rust, mold, wet or dry rot ..." Plaintiff's Exhibit 25, page 17. The policy also states that under this exclusion, "any ensuing loss not excluded is covered." *Id.* The policies which were in effect from May 1990 until May 1996, issued by Vigilant and then Pacific, provided that they did not cover any "loss caused by wear and tear, gradual deterioration, rust, corrosion, fungi, mold, dry or wet rot.... But we do insure ensuing covered loss unless another exclusion applies." Pacific's Exhibits in Support of Summary Judgment 1, 2, 3. Pacific argues that because the loss Schloss suffered was caused by rot, these exclusions apply.

Schloss has argued that the loss he suffered was the replacement of the wooden studs which constituted the support structure of his home. He has argued that this was his direct loss and that this loss was not a loss caused by rot, but was itself the rot. Schloss says that the loss, wet rot, was caused by water. He points to deposition testimony to establish that water intrusion from faulty construction caused the loss which is the rot. Schloss says that what the true "loss" is should be resolved by a jury. He has also argued that the costs of replacing the roof and EIFS system were losses caused by the rot that should also be covered as ensuing losses under the policies.

In analyzing Schloss's theory of recovery, the court finds that it must separately address the policy which was in effect from 1986 to 1990, and the policies which were in effect from 1990 to 1996. With respect to the 1986 to 1990 policy, the court first notes that under Schloss's own theory, the policy does not cover his losses for "rot" as he has defined them, because even if the court were to accept Schloss's argument that he seeks recovery for the rot itself,

not loss caused by rot, the replacement of the wooden studs would be excluded because it would be the rot as Schloss has defined it. In other words, Schloss has argued that the costs of replacing the wooden studs is itself the "rot." Since "rot" is excluded under the policy, these damages are excluded even under Schloss' theory.

Schloss also points out in his supplemental motion for partial summary judgment that there was no exclusion for negligent or faulty construction in the 1986 policy. Schloss further states that the 1986 policy does not exclude water damage from a leaking or faulty roof. Schloss argues, therefore, that his loss in the form of the removal of the roof and siding to repair the rot is not excluded under that policy and that these losses are ensuing losses of the rot covered by the policy.

 The court finds Schloss's argument defining the costs to remove and replace the roof and EIFS as their own losses unpersuasive. Although Schloss has argued that these were ensuing covered losses, Pacific responds that the cost of repairing the rot is the loss which is excluded, it is not an ensuing loss.

Although ensuing loss is not defined by the policy, the ordinary meaning given to this clause is clear, and the provision is unambiguous. *See e., McDonald v. State Farm Fire and Casualty Co.,* 119 Wash.2d 724, 837 P.2d 1000, 1005 (Wash.1992) (finding that an ensuing loss clause is unambiguous). "Ensue" means "to take place afterward; to follow as a chance, likely or necessary consequence." Webster's Third New International Dictionary 756 (1986). Courts have applied similar definitions. *See e.g., Aetna Ins. Co. v. Getchell Steel Treating Co.,* 395 F.2d 12, 16 (8th Cir. 1968) (ensue means to follow as a chance, likely, or necessary consequence; to take place afterwards). Reasonably interpreted, therefore, the ensuing loss clause means that if a specified uncovered loss occurs, here rot, then a separate loss

which follows as a result of the specified, uncovered loss which would otherwise be covered remains covered.

Removal and replacement of the roof and EIFS was done in order to correct the rot and to prevent future rot. Schloss admits that the roof and EIFS system were not damaged. Plaintiff's Answers to Interrogatories at ¶ 19(a). Schloss has testified in deposition that the exterior and interior walls had to be repaired in order to get to the wooden studs which had rotted. Schloss Deposition, page 43. These costs are, therefore, part of the cost of repair of the rot, not a separate ensuing loss.

■ The parties have advanced slightly different arguments with respect to the rot exclusions contained in the policies which covered Schloss' house from May 1990 until May 1996. These policies state that they exclude coverage for any "loss caused by wear and tear, gradual deterioration, rust, corrosion, fungi, mold, dry or wet rot.... But we do insure ensuing covered loss unless another exclusion applies." Pacific's Exhibits in Support of Summary Judgment 1, 2, 3.

Pacific has argued that Schloss' loss is excluded under the "loss caused by rot" exclusion, while Schloss argues that the losses are not excluded as loss caused by rot and, to the extent that they might otherwise be excluded, the ensuing loss provision should provide coverage. Schloss has argued that the costs of replacing the wooden studs are rot losses which were caused by water intrusion, not losses caused by rot. Schloss has further contended that to the extent that some of his losses are losses caused by rot, such as replacement of the EIFS and roof, those losses should be covered as ensuing losses. According to Schloss, the language of the policy is confusing because losses which are caused by the rot are both excluded and allowed as ensuing losses, so that an ambiguity is created whereby coverage should be given to the insured.

Pacific specifically addresses Schloss' argument that the loss was caused by water and not rot and argues that this approach has been rejected by Alabama courts. Pacific cites this court to *Koch v. State Farm Fire & Casualty Co.*, 565 So.2d 226 (Ala. 1990) and argues that this case establishes that it does not matter how the rot occurred, the damage is still rot.

In *Koch*, the insured argued that rot and deterioration in the wall of his house had been caused alternatively by hurricane wind-drive rain, or by faulty flashing around a chimney. The policy exclusion stated that it did not cover loss consisting of or directly and immediately caused by rot or water damages. *Koch*, 565 So.2d at 230. The court reasoned that it did not matter what the cause of the water seepage was, because none of the alleged seepage was immediate, but the damage instead occurred over a long period of decay, and the insurance company had an arguable reason for denying coverage for a claim based on rotting of the wall. While the policy provisions in *Koch* are not identical to the provisions at issue here, this case does lend support to the idea that even regardless of how the rot was caused, the cause of the rot is not relevant if the policy excludes loss caused by rot.

Schloss has argued that his losses also are not subject to the "loss caused by rot" exclusion because his losses were not "caused by rot," but were "rot." Under Schloss' interpretation of the policy, the excluded losses in the relevant policies are actually covered as to the cost to repair the exclusions. In other words, as he sees it, the cost of the repair of the rotted wood is "rot," not "loss caused by rot." Schloss' interpretation would, therefore, gut the listed exclusions. Applying his rationale to the policy as a whole, the repair of every exclusion in the relevant provision, whether rot, wear, or vermin etc., would be covered. Only events caused by the loss would be excluded. It is only with this strained interpretation of the policy, there-

fore, that the ambiguity identified by Schloss in the coverage of "ensuing losses" occurs. That is, that if the cost of repairing the event, here the rot, is covered, and only costs from losses caused by the rot, for example if rotted wood falls and damages the floor, are excluded, the damaged floor would actually be included as an ensuing loss, and so would be both excluded and included.

The court finds that this interpretation by Schloss is strained at best. Only if "loss" is considered to be the cost of repairing the rot does the ensuing loss provision make sense. The cost of repairing the rot is excluded from the policy because it is the loss caused by the rot, but if the rot also causes wood to fall and damage the floor, for example, then the cost of the repair for that ensuing loss is covered. In other words, costs from losses created by the rot can be covered, so there is no need to distinguish between rot, and the cost of replacing rot. Instead, "loss caused by rot" is the excluded cost of repair and replacement, and the ensuing loss provision can apply only if there is an additional loss. Because Schloss' interpretation renders the ensuing loss provision meaningless, the court finds that the provisions are not susceptible to the interpretation made by Schloss. *Cf. City of Delray Beach v. Agricultural Ins. Co.*, 85 F.3d 1527, 1536 (11th Cir.1996) (applying Florida law stating "this court will not interpret these insurance contracts in such a way that the ... exclusion clauses are rendered meaningless").

The court is not aware of any Alabama Supreme Court decisions which have applied this court's interpretation of "loss caused by rot." The court, however, is also not aware of any decisions interpreting "loss caused by rot" as Schloss does. In fact, the court has found one decision which undermines the interpretation made by Schloss. In *Aetna Casualty and Surety Co. v. Yates*, 344 F.2d 939 (5th Cir.1965), the plaintiffs discovered that the joists and sills of their home were almost completely rotted away. The cause of the rot was that the crawl space underneath the house was inadequately supplied with vents. The policy at issue excluded "loss caused by inherent vice, wear and tear, deterioration, rust, rot ..." The court found that several parts of this exclusion applied, and specifically held that the plaintiff's loss "surely was caused by 'rot'." *Id.* at 940. Impliedly, the court found that the plaintiff's "loss" was the cost of the damage to the rotted joists and sills of the home. Similarly, in this case, Schloss has claimed damage for the repair and replacement of the wooden studs which rotted, replacement of the EIFS, and replacement of the roof. As was discussed above, these costs constitute the costs of repair of the rot and, consequently, are the "loss caused by rot."

In his supplemental motion for summary judgment, Schloss points to the difference between the 1986 policy and the 1990 policy in an attempt to show that the 1990 policy should cover his loss. He argues that by excluding "rot" in 1986 and by excluding loss "caused by rot" in 1990, the 1990 policy allows for coverage of the losses he has claimed.

■ As to Schloss' argument that the insurance company intended to change the scope of the exclusion when the policy language was changed from "rot" in the 1986 policy to "loss caused by rot" in the 1990 policy, the court has not been provided an explanation of why the earlier policy excludes "rot," while the later policies exclude "loss caused by rot." In fact, Pacific does not appear to have responded to this portion of the Plaintiff's Supplemental Motion for Summary Judgment. Because the change in language is uniform as to all of the listed exclusions, so that the later policies do not attempt to draw a distinction between "rot," or any other exclusion, and "loss caused by". the exclusion, the court finds that the cost of replacement or repair which would have been considered to be "rot" under the old policy continues to be excluded under "loss caused by rot" lan-

guage in the later policies. *Cf. Compagnie Des Bauxites De Guinee v. Ins. Co. of North America,* 554 F.Supp. 1075, 1077 (W.D.Pa.1983) (drawing a distinction between excluded peril and "loss caused by" excluded peril because only two of the exclusions within the same policy were preceded by the "loss caused by" language).

Schloss makes the additional argument that the 1990 policy covers direct physical loss involving collapse of a building or any part of a building. According to Schloss, there is no logical reason under the policy or the law to differentiate between water intrusion which results in rot and water intrusion which causes rot and results in collapse. While it may be that Schloss does not agree with the distinction drawn by the insurance company, that disagreement does not entitle him to coverage. The Alabama Supreme Court has previously addressed a similar "collapse" provision and has held that "collapse" is an unambiguous term within the context of an insurance policy. *See Central Mutual Ins. Co. v. Royal,* 269 Ala. 372, 113 So.2d 680 (1959). Under the definition of collapse adopted by the Alabama Supreme Court, collapse is a falling in, loss of shape, or reduction to flattened form or rubble of a building or any part thereof. *Id.* at 683. Because Schloss' loss does not meet that definition, the court finds that the collapse provision does not provide Schloss any coverage in this case.

In finding that Schloss' losses are excluded by the rot exclusions of the policies which covered his home from 1986 to 1996, this court has addressed the arguments relative to that exclusion only. Schloss' Motion for Partial Summary Judgment with respect to the policies which were in effect between 1995 and 1996 also states that Schloss is entitled to coverage because his loss was an ensuing loss of a design or construction defect. In other words, Schloss has argued that there is a coverage provision of the policies which applies to give him coverage.

The policies which covered the Schloss' home until May 9, 1995 contained an exclusion which was worded:

**Negligent planning, construction, or maintenance.** We do not cover any loss caused by the negligent acts, errors, or omissions of you or any other person in planning, construction, or maintenance. This exclusion applies only when the loss is caused directly or indirectly by a peril excluded in this section. It does not matter whether the negligent acts, errors, or omissions take place on or off the insured property. . . .

*Id.* at Exs. 1–2. The Policy which covered the Schloss' home from May 9, 1995 until May 6, 1996 provided

**Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. . . . But we do insure ensuing covered loss unless another exclusion applies. . . .

Pacific Ex. 3 (emphasis in original).

The Defendants argue that these exclusions clearly apply because the definition of "caused by" is "any loss that is contributed to, made worse by, or in any way results from that peril."

Schloss alleges that the term "ensuing covered loss" is ambiguous in the policy which governed his loss from May 1995 until May 1996. He argues that under this policy, he should be given coverage. Schloss notes what he perceives to be double talk and circular reasoning because of the definitions of "caused by," as provided by the policy and "ensue," which is not defined by the policy. As previously discussed, "ensue" means "to happen or come afterwards or as a result." Webster's Ninth New Collegiate Dictionary 414 (1983). Schloss argues, therefore, that it is impossible for anything to be an "ensuing loss" which falls outside of the policy's definition of "caused by," which includes things which "in any way results from that

peril." In support of this argument, Schloss refers the court to evidence of insurance companies' employees' interpretations of whether the damage to his home is an "ensuing loss."

The court finds, however, that Schloss' argument ignores important language of the exclusion's exception. The critical language of the exception emphasizes that to be covered by the policy, an ensuing loss must be covered and not within another exclusion. Giving the terms of the exception the meaning that a person of ordinary intelligence would reasonably think the language had, the court finds that in order to be a covered ensuing loss under the policies, regardless of whether it occurs immediately as a result of the original loss or sometime thereafter, an ensuing loss must not be subject to another exclusion. *See American Concept Ins. Co. v. Jones,* 935 F.Supp. 1220, 1229 (D.Utah 1996) (finding under a similar provision that "damage to the pipe itself is excluded from coverage, but the ensuing loss to Joneses' home is covered unless it is otherwise excluded or excepted in the policy"); *Mc-Donald v. State Farm Fire and Casualty Co.,* 119 Wash.2d 724, 837 P.2d 1000, 1005 (1992) ("if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered."). In this case, the loss caused by the rot exclusion discussed above is an exclusion which applies. Therefore, even if the rot is an ensuing loss from negligent or faulty design or construction, it is subject to another exclusion, and is, therefore, not covered by the policies. Accordingly, Pacific and Vigilant are entitled to summary judgment in the form of a declaration of no liability for the damage to Schloss' home.

### B. Policy Issued by Cincinnati

The policies discussed above and the policy issued by Cincinnati are substantially similar in that both contain exclusions for loss "caused by rot" and for faulty or improper construction. Cincinnati argues that rot is explicitly a peril not insured against under its policy, and that the damages were caused by improper construction and/ or design, which is explicitly excluded from coverage under its policy. Cincinnati argues additionally that the damages are not covered under the "ensuing loss" exceptions because the damages are not an "ensuing loss" and, even assuming that any of the repair costs were an "ensuing loss," they are otherwise excluded or not covered by the policy.

The relevant Cincinnati policy language includes:

> We insure against risks of direct loss to property ... only if that loss is a physical loss to property; however we do not insure loss ... excluded under SECTION I—EXCLUSIONS; ... caused by ... wear and tear, marring, deterioration; ... inherent vice, latent defect, mechanical breakdown; ... smog, rust, mold, wet or dry rot.... [A]ny ensuing loss not excluded is covered.

As has been previously discussed, Schloss' residence was damaged by rot and deterioration, as a result of water intrusion caused by defective design and/ or construction. On its face the policy does not insure against deterioration or rot. *See Koch v. State Farm Fire and Cas. Co.,* 565 So.2d 226, 230 (Ala.1990).

Schloss again points to an "ensuing loss" exception to the provision. Under the rot exclusion, "any ensuing loss not excluded is covered." Schloss argues that the cost of ripping out the walls to repair and replace the home's wood framing and then rebuilding them is an "ensuing loss" to the rot damage for which the Cincinnati policy should provide coverage. That reading, however, strains the meaning of the policy beyond recognition. Schloss' expert agrees that "loss" is the cost to repair the damage done to the house. *See* Berman Dep. at 142, 11. 9–17. As was discussed above, the cost to tear down and rebuild walls in order to repair the rotten frame is simply part and parcel of the loss caused by the rot.

The parties have also presented arguments relative to an exclusion for defective construction. Under this provision, excluded perils include **"Faulty, inadequate, or defective** ... design, specifications, workmanship, repair, construction, renovation, remodeling...."" Again, the parties appear to agree that faulty or defective design, workmanship, construction, or renovations involving the roof and EIFS system were the cause of the water intrusion and the rotten frame of Schloss' home. The plain language of this exclusion applies to exclude coverage for the loss sustained in this case because it is apparently undisputed that the water which caused the loss caused by rot entered the home because of faulty, inadequate, or defective construction, in the present situation.

Schloss argues, however, that an ensuing loss exception provides him coverage. The exception provides, "any ensuing loss to property ... not excluded or excepted in this policy is covered." As was earlier discussed, however, all of Schloss' damages including replacing the wooden studs, the roof, and the EIFS are part of the loss caused by rot, which is clearly excepted from the policy. Cincinnati is, therefore, entitled to a declaratory judgment that it is not liable for the cost of repairing the rot.

In addition to coverage for the repair/replacement of the wooden studs in the walls of the home, Schloss has also argued that other losses he sustained should be covered by the policy. Schloss points first to additional coverage provided by Cincinnati Insurance for debris removal. The costs for debris removal are recoverable, however, only "if a Peril Insured Against causes the loss." Cincinnati's Exhibit A, page 4. In light of this court's conclusion that Schloss' loss was not caused by a peril insured against in this case, this coverage also does not apply.

Schloss points to another ensuing loss from the water intrusion: water stains on the interior walls and ceiling of the house. *See* Pl.'s Ex. 14 at 8, 10; Stoneburner Dep.

at 23, 26, 44–45; Reese Dep. at 89–91. Cincinnati, however, denies that Schloss is entitled to summary judgment on this claim because Schloss concedes that he has not filed a claim to recover the costs to repair the water stains. *See* Schloss Dep. at 36, 11. 7–14. Schloss also alleges that he is entitled to additional coverage for damage to the landscaping around the home. The court notes that, pursuant to the policy, this additional coverage is available for trees, shrubs, and other plants, including the lawn, for a loss caused by a vehicle not owned by a resident of Schloss' home. *See* Cincinnati's Ex. A, Policy at 5. While this additional landscaping coverage is subject to per occurrence and per item limitations, the coverage is not contingent upon being related to another covered loss. *See id.* It is not clear to the court whether Schloss has filed a claim for this "additional coverage" for vehicular damage to the landscaping around his home.

In his Response to the Motion for Summary Judgment, Schloss argues that he is "perplexed" as to why Cincinnati would argue that no claim had been made for these damages. Schloss states that he alleged in Count I of the Complaint, as amended, that additional coverages are applicable, and specifically referenced debris removal. Schloss points out that in the Complaint, as amended, he requests that the Defendants be made to pay all covered losses. Schloss also states that counsel for Cincinnati Insurance has asked him to make a written demand for the damages to his lawn.

At the pre-trial hearing held in this case, this court understood the parties to state that the landscape damage is still ongoing because the repairs are not completed. It also appears that Schloss has not received any estimate for the additional coverages damages which he has argued for in his Motion for Partial Summary Judgment. While it may be that Schloss has indicated an intent to file a claim for these damages, he has not yet done so. The court finds, therefore, that ruling on the motions for

summary judgment as to the additional coverages for water stains and landscaping would be premature. Summary judgment is therefore due to be denied as to the additional coverage claims for water stains and landscape damage, and those claims dismissed without prejudice to Schloss filing another complaint based on these coverages, should his claims be made and should they be denied as to coverage to which Schloss contends he is entitled.

## V. *CONCLUSION*

For the reasons discussed above, Pacific's Motion for Summary Judgment (Doc. # 22) is due to be GRANTED, Cincinnati's Motion for Summary Judgment (Doc. # 25) is due to be GRANTED, and Schloss' Motion for Partial Summary Judgment (Doc. # 28) is due to be DENIED. A separate order will be entered in accordance with this memorandum opinion.