This is an insurance bad faith case, in which the trial court granted the insurer's motion for summary judgment.
In November 1982, Mrs. Florence R. Mordecai, wife of Arthur O. Mordecai, fell and broke her arm. Mrs. Mordecai was hospitalized for five days. Upon her discharge, Dr. Crotwell, Mrs. Mordecai's treating physician, prescribed twenty-four-hour medical care. He signed a "physician's plan of treatment" for Upjohn Healthcare Services, wherein he stated that either R.N.'s or L.P.N.'s were to do the following:
 "Administer the medications, assist in rehabilitation with range of motion exercises or get a therapist if they have a therapist, for range of motion exercises. To watch for the shoulder immobilizer, make sure there [are] no circulation problems, to ambulate the patient with a walker and possibly have to use a bedside commode if she couldn't ambulate with a walker, to watch for any decubitus areas, and pressure points that might develop."
In the physician's report, Dr. Crotwell reported the following list of therapeutic services to be performed by the nurse:
"Vital signs: daily
Bandage changes: daily
Observation for decubitus: daily
Total daily care: daily"
During the period of Mrs. Mordecai's hospitalization and during the period of the nursing care, a contract of insurance was in effect between the Mordecais and Blue Cross-Blue Shield, appellee, for major medical insurance for "private duty nursing by a licensed professional nurse or a licensed practical nurse who neither is related to the member by blood or marriage nor regularly resides in the member's household." The coverage was for the "reasonable and customary fee for such services" and was "available to a member on the condition that the services . . . are determined by the company to have been medically necessary."
The Mordecais made written claims to Blue Cross through an agent in the local office between December and January for a total sum of $4,596.16 for the private nursing care. Blue Cross paid $42.84 of these claims but denied the remainder.
The Mordecais filed a two-count complaint against Blue Cross. Count one alleged breach of contract for health insurance. Count two alleged that Blue Cross's failure to pay for the expenses of the continuous home-nursing care was a bad faith refusal to pay the claim, and for that failure to pay the Mordecais sought punitive damages. Blue Cross denied both counts, contending that the private duty nursing care was determined by Blue Cross to be medically unnecessary. Blue Cross moved for summary judgment on both counts, with a supporting affidavit of Dr. Stephen L. Stigler, in which he opined that, based on the following documents, the care rendered *Page 97 
to Mrs. Mordecai was not medically necessary and did not require skilled services of an L.P.N. or R.N.: (1) contract of insurance; (2) physician's plan of treatment; (3) nurse's summary of private duty nursing; (4) Upjohn Healthcare Services' progress notes; (5) "Guide for Assigning Responsibilities to Nursing Personnel"; (6) an interoffice memo from Dr. Stigler to Dianne Pyle; and (8) the medical regulations.
The Mordecais responded to the motion for summary judgment, relying on two letters and the deposition from Mrs. Mordecai's treating physician, stating that the skilled home nursing care was medically necessary; the affidavit of Zorina Ali Morris, one of Mrs. Mordecai's treating nurses; the affidavit of Arthur O. Mordecai; the answers to plaintiff's interrogatories; and all documents relied on by Blue Cross on its motion for summary judgment.
The trial court granted summary judgment in favor of Blue Cross on the bad faith claim but denied summary judgment on the contract claim. Both parties moved for entry of judgment pursuant to Rule 54 (b), Ala.R.Civ.P., which was granted, and thus, the Mordecais appealed and Blue Cross cross-appealed. Blue Cross's cross-appeal, wherein Blue Cross alleged that the trial court erred in not granting summary judgment in its favor on the contract claim was dismissed [Jan. 14, 1985, 469 So.2d 728]. Thus, the only issue for our consideration is whether the trial court erred in granting Blue Cross's motion for summary judgment on the claim for bad faith refusal to pay the claim.
The law applicable to the case at hand has been summarized inMcLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,437 So.2d 86 (Ala. 1983), where this Court opined:
 "In Chavers v. National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981), this Court initially set out the parameters of a first-party claim of bad faith refusal to pay. In that case we held that there was implied by law a duty of good faith and fair dealing in contractual relationships. Bad faith was defined as `the intentional failure by the insurer to perform this duty implied in law.' 405 So.2d at 5. We also went on to state:
 "`[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either "(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal."'
 "405 So.2d at 7. We have further stated, in National Security Fire Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982):
 "`No lawful basis [for refusal to pay] "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." Gulf Atlantic Life Ins. Co. v. Barnes, Ala., 405 So.2d 916 (1981). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.'
 "We have summarized the required showing in a bad faith case as follows:
 "`(a) an insurance contract between the parties and a breach thereof by the defendant;
 "`(b) an intentional refusal to pay the insured's claim;
 "`(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "`(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "`(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "`In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable *Page 98 
ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "`The "debatable reason" under (c) above means an arguable reason, one that is open to dispute or question. Webster's Third New International Dictionary (1931) at 116. See Chavers
405 So.2d at 10; see also Embry, J., concurring on rehearing in Aspinwall v. Gowens, Ala. 405 So.2d 134 (1981).'
 "417 So.2d at 183. Finally, in National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357, 1362
(Ala. 1982), this Court held:
 "`In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.'"
437 So.2d at 89-90.
Here, as in McLaughlin, the existence of the contract is not in question and it is undisputed that Blue Cross intentionally refused to pay the entire claim. Thus, in McLaughlin, the Court was asked to determine whether there was a debatable reason for denying the claim. In this case, however, the Mordecais do not assert that there was an absence of a debatable claim under the facts as gathered by Blue Cross. Instead, the Mordecais contend that "the failure of Blue Cross to consider portions of the nurse's notes and to consult with the treating physician and nurses regarding the treatment constitutes an intentional failure to determine the existence of a legitimate or arguable reason to refuse to pay the claim." They argue that "any insurance company can look at only the facts it wants to see which are favorable, and ignore other facts which are unfavorable, and, based upon the favorable facts, make a determination that the claim should be denied." Specifically, the Mordecais contend that Blue Cross intentionally failed to contact Mrs. Mordecai's treating physician "to determine his reason for prescribing home nursing care for Mrs. Mordecai and that Blue Cross intentionally failed to contact any of the nurses to determine whether the notes and summaries accurately and adequately summarized the treatment provided."
The Mordecais further contend:
 "Furthermore, Dr. Stigler, upon whose advice Blue Cross relied in making its determination of no medical necessity and its determination that the services rendered were custodial in nature and not covered under the contract, quite obviously overlooked certain portions of the nurse's summaries and notes which revealed that a professional nurse was necessary to perform the service."
The evidence showed that Blue Cross accepted and evaluated documents supporting the claim. We reject the Mordecais' claim that Blue Cross was under a duty to do more than review the documents claimant submitted to it. Whether Blue Cross correctly determined that the home nursing care rendered to Mrs. Mordecai was not "medically necessary" can be tried in the breach of contract action still pending between these parties.
In summary, the Mordecais, in brief, state that "the terms of the contract which require Blue Cross to make a determination of medical necessity in each case where a claim is submitted to [it] under the contract carry with them a duty and obligation of fair dealing on the part of Blue Cross which extends beyond a mere review of nurses' notes as occurred in this case."
We recognize that we are reviewing a summary judgment, but we are satisfied from the record that the trial court had before it evidence showing that the movant was entitled to a summary judgment on the *Page 99 
bad faith claim. Rule 56, Ala.R.Civ.P., McLaughlin, supra.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER, J., recused.
EMBRY, J., not sitting.