Appeal by plaintiff, Fred E. Strickland, from a judgment for defendant, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. ("Farm Bureau"), in plaintiff's action against the defendant for breach of a contract of insurance. We affirm.
At the request of Strickland, its insured, Farm Bureau transferred existing collision coverage from a farm truck to Strickland's newly acquired automobile. The new policy was issued effective November 3, 1982; however, no premium payment was made upon issue. The declarations sheet on the new policy, together with the first notice of premium due, was mailed by Farm Bureau and was received by Strickland on November 10, 1982. The premium was not paid. A second notice was mailed by Farm Bureau and was received by Strickland on either November 20 or 21, 1982. That notice recited: "THIS IS YOUR FINAL NOTICE. DO NOT LET YOUR POLICY BE CANCELLED FOR NON-PAYMENT OF PREMIUM."
When no premium payment had been received by December 7, 1982, Farm Bureau on that date mailed a letter to Strickland at the address shown on the policy, the same address as used on previous correspondence and later confirmed as correct by Strickland. This letter stated:
 "We have not received the additional premium recently requested to maintain coverage on the above listed policy. This policy is therefore rescinded and you have no coverage.
 "Should you wish to reinstate your policy, we will be happy to comply, effective the date premium is received in this office or any of our local service centers."
Strickland denied receiving this letter, but maintained that the premium was paid by mail on December 18, 1982. Farm Bureau received the premium payment on December 22, 1982, in a Farm Bureau return envelope postmarked December 21, 1982. In accord with its letter of December 7, 1982, Farm Bureau negotiated Strickland's check, issued a new declarations sheet which reflected a new effective date, December 22, 1982, and mailed the new declarations sheet to Strickland.
Meanwhile, Strickland's automobile was damaged in a collision which occurred on December 20, 1982. Strickland filed a loss report with Farm Bureau on the next day. A Farm Bureau agent contacted Strickland and acquainted him with the question concerning the premium. Another representative contacted Strickland about a week later and arranged to take the policyholder's statement, which was done. After investigation, Farm Bureau denied coverage by letter on January 10, 1983, on the ground that the policy had been cancelled before the date of the accident, December 20, 1982, and that notice of the cancellation had been properly mailed on December 7, 1982.
Thereafter, Strickland filed this action, alleging breach of contract. Following Farm Bureau's answer, Strickland filed an amended complaint alleging bad faith refusal to pay; he later amended the complaint to state a claim based upon fraudulent misrepresentation. Apparently considering matters outside the pleadings, the trial court granted Farm Bureau's motion to dismiss the fraud count, and the case was tried to a jury on the claims of breach of contract and bad faith refusal to pay.
At the close of the evidence, both parties moved for directed verdicts. Farm Bureau's motion addressed to the bad faith *Page 351 
refusal to pay count was granted, while Strickland's motion addressed to the contract count was denied. The jury returned a verdict in favor of Farm Bureau. Subsequently, Strickland moved for judgment notwithstanding the verdict or a new trial. This motion was denied, and Strickland appealed.
The standard of review applicable to this appeal is as it was explained in Casey v. Jones, 410 So.2d 5, 7-8 (Ala. 1981):
 "The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand a motion for J.N.O.V. Citing 5A Moore's Federal Practice § 50.07[2], this Court in Hanson v. Couch, 360 So.2d 942, 944 (Ala. 1978), stated:
 " 'A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence. Ala.R.Civ.P. 50, Committee Comments. Granting the motion for judgment notwithstanding the verdict says, without weighing the credibility of the evidence, there can be but one reasonable conclusion from the evidence as to the proper judgment.'
". . .
 "For the sake of clarity, we restate the familiar. Other than objections to admissibility, evidentiary challenges are divided into two separate and distinct categories: 1) sufficiency of the evidence, raised by motions for directed verdict and for J.N.O.V. and measured by the objective 'scintilla' rule; and 2) weight and preponderance of the evidence, raised by motion for a new trial and measured by the more subjective 'palpably wrong, manifestly unjust' standard."
By way of his motion for J.N.O.V., Strickland also contends that the trial court erred in directing a verdict for Farm Bureau on his bad faith refusal claim and in dismissing his fraud claim. As far as the bad faith refusal claim is concerned, our review of the evidence is made in a light most favorable to Strickland to determine whether or not there was any evidence to support that theory. On the fraud claim, the question is whether there was a genuine issue of material fact regarding the allegation of fraud. Morton v. Allstate Ins. Co.,486 So.2d 1268 (Ala. 1986).
 I. The Contract Claim.
Against the breach of contract claim, Farm Bureau pleaded cancellation as a defense. Under Code of 1975, § 27-23-25:
 "Proof of mailing of notice of cancellation or of reasons for cancellation to the named insured at the address shown in the policy shall be sufficient proof of notice."
In Hilliar v. State Farm Mutual Automobile Ins. Co.,451 So.2d 287, 288-89 (Ala. 1984), this Court cited its decision inSecurity Ins. Co. of Hartford v. Smith, 360 So.2d 280 (Ala. 1978), for the proposition controlling in these instances:
 "[W]here an insurer is setting up cancellation as a defense on a policy, it has the burden of proving by clear and convincing evidence that the notice of cancellation was mailed to the insured. Proof of actual receipt of the notice by the insured is not required, and where the insured insists, as in this case, that the notice was never received, it becomes a question of fact as to whether the cancellation notice was properly mailed. . . ."
A review of the record establishes that Farm Bureau complied with these authorities and met its burden of proving the proper mailing of the cancellation notice.
A vice president in Farm Bureau's underwriting department, Ms. Jane Adams, detailed the special procedure used by the company in handling a cancellation notice:
 " 'When a cancellation letter is prepared, it is first sent to a typist and then to a proofreader for the accuracy of name, address, policy number, and cancellation date, among other things to be checked. Next the original and one copy of the *Page 352 
letter is sent to the mail clerk to be prepared for mailing.' . . .
 " 'The original and copy are then placed in a designated basket for cancellation letters only. Once the letter is ready, it is removed from the basket by Linda Hudson or Darlene Evans.' . . .
 " 'After examination, the original is put in an envelope and the copy is date stamped and initialed by one of these two employees'. . . ."
 " 'The letter is then postaged [sic], sealed, counted, and placed in a tray and then taken to the loading dock to be picked up by postal employees.' . . ."
The mailroom supervisor at Farm Bureau, Ms. Linda Hudson, testified that she receives two original copies of the cancellation letter, compares the two for the address, places the signed original in a window envelope, and initials the other to verify her actions. Ms. Hudson further explained that she then places postage on the letters and places them in a postal tray, from which an employee under her direction takes them to a loading dock to be picked up by the Postal Service. She added that persons check to insure that this mail has been picked up and report to her.
In this instance, the initial "L" as written by Ms. Hudson appeared on the unsigned original as did the date stamp, December 7, 1982, applied by her. This evidence clearly established that the cancellation notice was properly mailed. Strickland testified that the address on the notices was the correct mailing address and that he received the billing notices mailed to that address, which notices preceded the cancellation notice. Having this evidence, the jury could have properly found a verdict for Farm Bureau. The trial court was thus not in error for denying Strickland's motion for J.N.O.V. or new trial on the contract count.
It is true, as Strickland argues, that the policy contained a provision which required ten days' notice, while the cancellation letter stated that cancellation was effective immediately. But Strickland can take nothing from that fact. This Court has addressed such a situation in Trans-AmericanIns. Co. v. Wilson, 262 Ala. 532, 80 So.2d 253 (1955), which adopted the principle earlier pronounced in Black v. TravelersIns. Co., 231 Ala. 415, 416, 165 So. 221, 222 (1936):
 "The rule is well settled in this and other jurisdictions, that, when the notice declares that the cancellation is presently operative, or fixes a time shorter than that prescribed, where the policy requires a certain number of days' notice, it becomes effective at the expiration of the prescribed period. Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250 [(1928)]; 32 Corpus Juris, 1249, 1250, § 437, note 18; 35 A.L.R. p. 899 et seq., note."
Under that rule, the cancellation notice became effective ten days after December 7, 1982, i.e., December 17, 1982, which date was still prior to the date of the loss occurring on December 20, 1982.
Finally, Strickland argues that coverage existed for the collision loss because the company had failed to clearly convey to the insured its intent to prospectively apply any premium received. Farm Bureau had the burden of proving that it clearly conveyed its intent to do so to Strickland. The cancellation letter itself stated: "Should you wish to reinstate your policy, we will be happy to comply, effective the date premium is received." This was a clear expression of Farm Bureau's intent, as the jury must have found.
 II. The Bad Faith Refusal To Pay Claim.
In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357,1362 (Ala. 1982), this Court explained:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a *Page 353 
fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
There is nothing in the record indicating that this case falls beyond the normal. Not only does the proof in this case fail to show that Strickland was entitled to a directed verdict, but, to the contrary, the evidence supports the verdict of the jury in favor of Farm Bureau. Thus, the tort claim failed as a matter of law. Mordecai v. Blue Cross-Blue Shield, 474 So.2d 95
(Ala. 1985); Dutton, supra.
 III. The Fraud Claim.
Strickland's allegations of fraud are contained in Count III of his amended complaint:
 "1. The allegations of paragraph one are incorporated herein by reference.
 "2. At the time defendant negotiated plaintiff's check, and applied same to a policy other than the policy for which the said check was tendered, it knew the check was tendered for coverage effective 11-3-82, it knew the plaintiff was relying on such coverage, and it knew all of the facts upon which it ultimately based its denial of coverage, yet it failed to reveal or withheld from plaintiff the fact that coverage would be denied, did not inform plaintiff of its intent to apply plaintiff's check to a 'new' policy not affording coverage, which it issued prior to advising plaintiff of the denial of coverage, while its agents, servants and employees were telling plaintiff that the matter was still being looked into, there should not be a problem, and the like, all of which amounts to a willful misrepresentation, or a reckless misrepresentation, or mistaken misrepresentation, or deceit, or suppression of the truth by concealing or withholding material facts.
 "3. Plaintiff was induced to act or refrain from acting to his injury as a result of the actions of the defendant."
Farm Bureau's motion to dismiss this fraud count was argued to the trial court and then granted, apparently under the authority of Rule 12(b), A.R.Civ.P. It appears that the fraud claim was based upon the allegation that Strickland had mailed his late premium check to Farm Bureau. This was alleged as the reliance. Thus, whatever misrepresentation existed must have occurred prior to that reliance. See Sovereign Camp, W.O.W. v.Moore, 232 Ala. 463, 168 So. 577 (1936); Code of 1975, §6-5-101. In other words, the element of reliance cannot precede the alleged misrepresentation where fraud by misrepresentation is claimed.
Strickland argues fraud by suppression from the fact that Farm Bureau's agents, during their investigation, told Strickland nothing about the company's intention to cancel or to apply any premium received thereafter prospectively. Strickland, however, failed to adduce any evidence that these agents possessed any prior knowledge of either the company's intention to cancel or to apply, prospectively, any premium received thereafter, or that these agents, themselves, had any intention to deceive him. In short, no evidence of any active concealment or misrepresentation was shown to be present.Berkel Company Contractors, Inc. v. Providence Hospital,454 So.2d 496 (Ala. 1984). The company clearly disclosed its intention to prospectively apply late premiums, as we have shown. No inference of concealment is suggested by the fact that such action was taken by the company following the mailing of the late payment, or from any other conduct on the part of the company. Summary judgment, therefore, was appropriate on the plaintiff's fraud count.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, ADAMS and HOUSTON, JJ., concur. *Page 354