Albert J. STONE, and Tammy Stone, in their capacity as assignees of Arlene M. Bateman, Plaintiffs–Appellants/Cross–Respondents,

v.

FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI a Missouri Corporation, Defendant–Respondent/Cross–Appellant.

Nos. 26965, 26979.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 11, 2006.

Thomas W. Millington, Springfield, MO, for appellant.

Michael J. Patton, Joseph P. Winget, Springfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

On December 30, 2005, this Court issued an opinion in this cause. On February 28, 2006, the Supreme Court of Missouri sustained an application for transfer to that court. On September 26, 2006, the Supreme Court entered an order retransferring the cause to this Court. The original opinion of this Court, which follows, is now readopted and reissued.

Albert and Tammy Stone (collectively, "the Stones"), in their capacities as the assignees of Arlene Bateman ("Arlene"), sued Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau") to recover damages allegedly caused by Farm Bureau's failure to defend and/or settle personal injury and wrongful death claims asserted against Arlene. These claims arose out of a December 2002 automobile collision involving a vehicle driven by Arlene. The Stones' petition asserted the following theories of recovery against Farm Bureau: (1) breach of contract; (2) breach of fiduciary duty to defend; (3) breach of fiduciary duty to settle; (4) bad faith refusal to defend; (5) bad faith refusal to settle; and (6) punitive damages. Farm Bureau contended, *inter alia*, that the policy of automobile liability insurance it issued to Gary and Arlene Bateman (collectively, "the Batemans") did not provide Arlene with any coverage because the policy had been canceled before the collision.

The Stones and Farm Bureau filed opposing motions for summary judgment on the cancellation issue. The trial court determined that Farm Bureau did provide coverage to Arlene because the insurer's attempt to cancel the Batemans' policy was ineffective. Based on this determination, the court then decided Farm Bureau's actions in declining to defend Arlene or settle the claims asserted against her consti-

tuted a breach of contract. Accordingly, the court entered a $1,004,295 judgment in favor of the Stones based on their count for breach of contract. The court entered summary judgment for Farm Bureau on all other theories of recovery asserted in the Stones' petition. The Stones and Farm Bureau both appealed from the judgment.

For the reasons stated below, we conclude that the trial court erred in deciding the policy had not been canceled. Accordingly, the judgment in favor of the Stones for breach of contract must be reversed. Since none of the Stones' other theories of recovery can succeed unless there was coverage for Arlene at the time of the collision, we remand the case with directions for the trial court to enter judgment in favor of Farm Bureau pursuant to Rule 84.14.[1]

## I. Facts and Procedural History

As of January 2000, Farm Bureau insured a home ("policy 050"), a 1988 Toyota truck ("policy 911") and a 1995 GMC truck ("policy 995") owned by the Batemans. The premiums for these policies were to be paid in monthly installments. Farm Bureau sent the Batemans an invoice each month showing the installment due on each policy for the upcoming month. The Batemans had considerable difficulty paying their premium installments in a timely fashion.

On May 26, 2000, Farm Bureau mailed the Batemans an invoice listing the installment amounts due on each policy. The payment due date was June 10, 2000. The Batemans did not pay these premium installments. On June 20th, Farm Bureau mailed the Batemans a document that we will denominate a "reminder" notice. This reminder notice listed the payment due date (6/10), the total amount due ($144.18), the numbers of the three policies for which no payment had been received and the date in July when each policy would expire. After setting out this information, the notice stated:

> Just a friendly reminder that we have not received your monthly payment. We want to keep you from losing the benefits of your valuable insurance protection and/or membership. If you wish to keep your policies and/or membership from cancelling, we must receive your payment for the amount due prior to the expiration date shown above at our Home Office or local Farm Bureau Service Center. If your payment was mailed before you received this notice, thank you for your continued business. However, we suggest you contact your Farm Bureau Agent or Service Center to make sure your coverages are in force. Your agent will be glad to assist you if you need further information, wish to change to another payment plan or simply have any questions about this notice.

Finally, the reminder notice listed the name and telephone number for the Batemans' Farm Bureau agent. The Batemans paid the overdue premiums before the listed expiration dates.

In July 2000, the Batemans were sent an invoice listing the amounts due in August. When no payment was received, Farm Bureau sent the Batemans another reminder notice on all three policies in August 2000. Thereafter, the overdue premiums were paid before the September expiration dates listed in the notice.

From August 2000 until March 2001, the Batemans made their premium installment payments on time. They did not pay the April installments that were due on the

---

**1.** All references to rules are to Missouri Court Rules (2005).

10th of the month. On April 20, 2001, Farm Bureau mailed the Batemans a reminder notice concerning all three policies. The Batemans paid the overdue April premiums before the listed May expiration dates.

The Batemans did not pay the May installments that were due on the 10th of the month. On May 21, 2001, Farm Bureau sent the Batemans a reminder notice listing the following expiration dates for the policies: (1) policy 050—6/9/01; (2) policy 911—6/14/01; and (3) policy 995—7/03/01. The Batemans did not pay the past-due premiums due for policy 050 or policy 911. On June 12, 2001, Farm Bureau mailed the Batemans a different type of notice that we will denominate a "cancellation" notice. This cancellation notice listed the policy number, the property insured and the "Date of Cancellation" as 6/9/01. It then stated:

> You recently received a notice reminding you of the expiration date of your policy(ies). As no payment of premium has been received, this is your final notice that your policy(ies) was/were cancelled on the date listed above at 12:01 A.M. Central Standard Time. If there is any premium due for the coverage we have provided, it is listed above and is due upon receipt. Please contact your agent for further information or if you have questions about this notice.

The cancellation notice provided the name and telephone number of the Batemans' Farm Bureau agent. On June 15, 2001, Farm Bureau mailed the Batemans the same type of notice informing them that policy 911 had been cancelled as of June 14, 2001.

The only installment payment listed on the June 29, 2001 invoice was for policy 995. The Batemans did not pay this pre-mium. On August 7, 2001, Farm Bureau sent the Batemans a cancellation notice informing them that policy 995 had been cancelled for nonpayment of premium as of August 4, 2001.[2] It does not appear that the Batemans insured the 1995 GMC truck again until February 2002.

Sometime in July 2001, the Batemans apparently reinstated policy 050 and policy 911. Thereafter, the following events occurred:

September 20: The Batemans were mailed a reminder notice on policy 911 and policy 050 that the installment premiums had not been paid.

October 3: Policy 911 was canceled effective 10/2/01 for nonpayment of premium.

October 26: Policy 911 appears to have been reinstated because the invoice lists installments due on this policy and policy 050.

November 20: The Batemans were mailed a reminder notice on policy 911 and policy 050 that the installment premiums had not been paid.

December 11: Policy 911 was canceled effective 12/09/01 for nonpayment of premium.

December 25: Policy 050 was canceled effective 12/21/01 for nonpayment of premium.

This pattern repeated itself in 2002. It appears that policy 911 was reinstated in January 2002 because the January 26th invoice lists an installment payment due on that policy. The installment was not paid on time, and Farm Bureau sent the Batemans a reminder notice on February 20, 2002. The Batemans paid the installment before a cancellation notice was sent. In February 2002, the Batemans again pro-

---

2. The cancellation notice makes reference to a reminder notice having been sent, but we have not been able to find a copy of the latter document in the record on appeal.

cured insurance on their house and the 1995 GMC truck from Farm Bureau. The house policy continued to bear policy number 050, but the 1995 GMC truck policy was issued under a new policy number ("policy 977"). Thereafter, the following events occurred:

February 20: The Batemans were mailed a reminder notice on policy 911 that the installment premium had not been paid.

March 20: The Batemans were mailed a reminder notice on policy 977 and policy 050 that the installment premiums had not been paid.

April 10: An invoice was sent listing installment payments that were due on policy 977 and policy 050. The invoice stated that "[n]o insurance is provided: If premium is not received by the Payment Due Date." This language was included in all future invoices relating to policy 977.

April 16: Policy 911 was canceled effective 4/14/02 for nonpayment of premium.

April 22: The Batemans were mailed a reminder notice on policy 977 and policy 050 that the installment premiums had not been paid.

May 25: Policy 977 was canceled effective 5/24/02 for nonpayment of premium.

June 3: The Batemans appear to have reinstated policy 977 because they received an invoice listing an installment premium due on that policy.

June 13: The Batemans were mailed a reminder notice on policy 977 and policy 050 that the installment premiums had not been paid.

June 26: Policy 977 was canceled effective 6/25/02 for nonpayment of premium.

July 8: Policy 050 was canceled effective 7/04/02 for nonpayment of premium.

We have set out the foregoing history of the Batemans' dealings with Farm Bureau so that the events described hereinafter can be considered in their proper context. In August 2002, Farm Bureau issued an automobile policy that insured the Batemans' 1995 GMC truck. The named insureds were Gary and Arlene Bateman. This policy continued to bear the number 977 and had a policy period from August 2, 2002 to February 2, 2003. It provided a $250,000 combined single limit of liability coverage. A section of the policy identified as "General Provisions" contained a provision which states, in pertinent part, as follows:

### TERMINATION
#### Cancellation

This policy may be canceled during the policy period as follows:

\* \* \*

2. **We** may cancel by mailing to the named insured shown on the Declaration Page at the address last known by **us:**

a. At least ten (10) days notice:

(1) If cancellation is for nonpayment of premium....

\* \* \*

#### Other Termination Provisions

1. Proof of mailing of any notice shall be sufficient proof of notice.

\* \* \*

3. The effective date of cancellation stated in the notice will become the end of the policy period.

(Bold emphasis in original.)

On August 26, 2002, Farm Bureau mailed the Batemans an invoice notifying them that they owed an installment payment of $58.05 on policy 977. Like prior invoices sent to the Batemans since April

2002, this one informed them that "[n]o insurance is provided: If premium is not received by the Payment Due Date." The payment was due by September 10, 2002. The Batemans did not pay the premium installment by that date. On September 20, 2002, Farm Bureau mailed the Batemans a reminder notice. This reminder notice informed the Batemans of the payment due date (9/10), the total amount due ($58.05), the fact that no payment had been received on policy 977 and a policy expiration date of October 9, 2002. After setting out this information, the notice stated:

> Just a friendly reminder that we have not received your monthly payment. We want to keep you from losing the benefits of your valuable insurance protection and/or membership. If you wish to keep your policies and/or membership from canceling, we must receive your payment for the amount due prior to the expiration date shown above at our Home Office or local Farm Bureau Service Center. If your payment was mailed before you received this notice, thank you for your continued business. However, we suggest you contact your Farm Bureau Agent or Service Center to make sure your coverages are in force. Your agent will be glad to assist you if you need further information, wish to change to another payment plan or simply have any questions about this notice.

Once again, the reminder notice listed the name and telephone number for the Batemans' Farm Bureau agent. The Batemans did not pay the amount due. On October 10, 2002, Farm Bureau mailed the Batemans a cancellation notice. This notice listed the policy number (977), the vehicle insured as the 1995 GMC truck and the "Date of Cancellation" as "10/09/2002." The notice then stated:

> You recently received a notice reminding you of the expiration date of your policy(ies). As no payment of premium has been received, this is your final notice that your policy(ies) was/were cancelled on the date listed above at 12:01 A.M. Central Standard Time. If there is any premium due for the coverage provided to the date of cancellation, it is listed above and is due upon receipt. Any unpaid balance may be transferred to another policy. Please contact your agent for further information concerning reinstatement of this policy or if you have questions about this notice.

The cancellation notice provided the name and telephone number of the Batemans' Farm Bureau agent. After receiving the cancellation notice from Farm Bureau, the Batemans made no effort to obtain liability insurance on the 1995 GMC truck through another insurer.

On December 23, 2002, Arlene was driving the 1995 GMC truck on Highway 5 in Laclede County, Missouri. Her truck crossed the center line and struck another vehicle occupied by Albert Stone ("Albert") and his wife, Nadine. She was killed in the crash, and Albert was seriously injured.

In February 2003, the Batemans attempted to make a premium payment on policy 977 by sending Farm Bureau a check for $300. Farm Bureau took the position that policy 977 had been canceled on October 9, 2002 for nonpayment of premium. The Batemans' check was mailed back to them.

In July 2003, Albert sued Arlene to recover damages for his personal injuries. Albert and his daughter, Tammy, also filed a separate suit against Arlene seeking to recover damages for Nadine's wrongful death. Farm Bureau denied coverage and refused to defend either lawsuit on the ground that policy 977, the automobile lia-

bility insurance policy covering the 1995 GMC truck, had been canceled as of October 9, 2002. Farm Bureau declined to accept the Stones' offers to settle the personal injury and wrongful death claims for the $250,000 limit of the Batemans' liability coverage. After bench trials, Albert obtained a $538,000 judgment against Arlene on the personal injury claim; the Stones obtained a $368,000 judgment against Arlene on the wrongful death claim. Thereafter, Arlene assigned any claims she might have against Farm Bureau to the Stones.

In March 2004, the Stones sued Farm Bureau. As Arlene's assignees, the Stones asserted the following theories of recovery against Farm Bureau: Count I—breach of contract; Count II—breach of fiduciary duty to defend; Count III—breach of fiduciary duty to settle; Count IV—bad faith in failure to defend; Count V—bad faith failure and refusal to settle; and Count VI—a request for exemplary damages. Among other defenses, Farm Bureau asserted that the policy on the 1995 GMC truck had been canceled for nonpayment of premium as of October 9, 2002.

In September 2004, the Stones moved for partial summary judgment. They sought a determination from the trial court that: (1) Batemans' policy on the 1995 GMC truck was in effect on December 23, 2002; (2) Farm Bureau's refusal to defend and settle the two suits against Arlene constituted at least a breach of contract; and (3) the damages Arlene sustained due to that breach was an amount equal to the two judgments entered against her, plus post-judgment interest. Farm Bureau responded to the Stones' motion and filed its own motion for summary judgment assert-

ing, among other defenses, that it had canceled policy 977 prior to the collision.

In March 2005, the trial court entered a judgment in the Stones' favor based on Count I of their petition, which asserted the breach of contract theory against Farm Bureau. The court assessed damages on Count I at $1,004,295. This sum was equal to the two judgments entered against Arlene, plus post-judgment interest. The court decided that Farm Bureau's notice of cancellation was ineffectual; therefore, the insurer did provide liability coverage for Arlene because her policy remained in effect through the date of the collision on December 23, 2002. The trial court granted Farm Bureau's motion for summary judgment as to Counts II through VI of the Stones' petition.[3] Taken together, the rulings on the respective motions for summary judgment disposed of all issues in the case.

## II. Discussion and Decision

Farm Bureau and the Stones have both appealed from the judgment. The Stones present four points on appeal, all advancing various reasons why the trial court erred in entering summary judgment for Farm Bureau on Counts II through VI of the petition. Farm Bureau presents three points on appeal. In one point, Farm Bureau contends the trial court erred in granting summary judgment on Count I of the Stones' petition because policy 977 had been canceled for nonpayment of premium prior to the collision. Since we find this issue to be dispositive of all other issues presented in both appeals, we address the cancellation issue first.

---

**3.** The court decided the relief sought by the Stones in Counts II through V was duplicative of that already awarded on Count I. As to Count VI, the court decided there was insuffi- cient evidence as a matter of law to support an award of punitive damages against Farm Bureau.

"The propriety of summary judgment is purely an issue of law." *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). As the opinion in *ITT* explains, Rule 74.04 distinguishes between motions for summary judgment filed by a "claimant" and by a "defending party." Id. at 380. A claimant "seeks to recover" via a claim, counterclaim, cross-claim or request for declaratory judgment. Id.; Rule 74.04(a). A defending party is "one against whom recovery is sought." *ITT*, 854 S.W.2d at 380; Rule 74.04(b). In the case at bar, the Stones were claimants, and Farm Bureau was the defending party.

One of Farm Bureau's affirmative defenses was that policy 977 had been canceled prior to the accident. *See Nichols v. Mama Stuffeati's*, 965 S.W.2d 171, 174 (Mo.App.1997).[4] If the policy was canceled, the Stones' derivative claims against Farm Bureau could not succeed because all their theories of recovery were dependent on the existence of liability insurance coverage for Arlene at the time the collision occurred.[5] Therefore, as claimants, the Stones were not entitled to summary judgment unless they established that Farm Bureau's affirmative defense of cancellation failed as a matter of law. *See Hearod v. Baggs*, 169 S.W.3d 198, 202–03

(Mo.App.2005); *Stormer v. Richfield Hospitality Services, Inc.*, 60 S.W.3d 10, 12 (Mo.App.2001).

Whether policy 977 was canceled prior to December 23, 2002 presents an issue of law for us to decide because the material facts bearing on this question are undisputed. *See City of Springfield v. Gee*, 149 S.W.3d 609, 612 (Mo.App.2004); *Daniels v. Senior Care, Inc.*, 21 S.W.3d 133, 135 (Mo.App.2000). In determining whether the trial court properly granted summary judgment to the Stones, we employ a *de novo* standard of review. *Gee*, 149 S.W.3d at 612; *Bland v. IMCO Recycling, Inc.*, 122 S.W.3d 98, 102 (Mo.App. 2003). We do not defer to the trial court's order granting summary judgment. *Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 665 (Mo.App.2002). Rather, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment. *Stormer*, 60 S.W.3d at 12.

Absent an equitable ground for rescission, an insurance policy may only be canceled by mutual assent of the parties or pursuant to the terms of the policy. *MFA Mut. Ins. Co. v. Southwest Baptist College*, 381 S.W.2d 797, 801 (Mo.1964); *Stickler v. Foremost Signature Ins. Co.*, 150 S.W.3d

4. As the party asserting the defense, Farm Bureau bore the burden of proving cancellation. *Blanks v. Farmers Ins. Co., Inc.*, 97 S.W.3d 1, 5 (Mo.App.2002); *Gambill v. Cedar Fork Mut. Aid Soc'y*, 967 S.W.2d 310, 312 (Mo.App.1998).

5. The instant lawsuit against Farm Bureau was brought by the Stones in their capacities as Arlene's assignees. It is well-settled that "[a] party making a claim through a derivative right acquires no greater rights in law or equity than the party for whom it was substituted." *Freeman v. Leader Nat. Ins. Co.*, 58 S.W.3d 590, 597 (Mo.App.2001). Thus, the Stones stand in Arlene's shoes and may only

recover if Farm Bureau did provide liability insurance coverage to Arlene for the December 23, 2002 collision. *State ex rel. Lumbermens Mut. Cas. Co. v. Stubbs*, 471 S.W.2d 268, 269 (Mo. banc 1971) (if there can be no recovery on the part of the insured, there can be no recovery on the part of his assignee, who would stand in the insured's shoes); *Bonner v. Automobile Club Inter–Insurance Exchange*, 899 S.W.2d 925, 928 (Mo.App. 1995) (the plaintiffs, who were assigned insured's claims against his insurer for bad faith refusal to settle and defend, stand in the shoes of the assignor-insured).

314, 316 (Mo.App.2004).[6] In the case at bar, Farm Bureau sought to unilaterally cancel the policy for nonpayment of premium. "A unilateral cancellation must strictly comply with the policy." *Blair v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 607 (Mo. banc 2003). Farm Bureau's policy authorized it to cancel policy 977 by mailing to the Batemans "[a]t least ten (10) days notice: (1) If cancellation is for nonpayment of premium." Neither party points out any ambiguity in this provision, and we find none. Pursuant to this provision, Farm Bureau could cancel the Batemans' policy for nonpayment of premium by mailing them a cancellation notice at least 10 days before the date of cancellation. *Blair*, 118 S.W.3d at 607; *Stickler*, 150 S.W.3d at 317.

Farm Bureau first argues that it complied with this policy provision because the August 26, 2002 invoice constituted an effective cancellation notice for policy 977. Farm Bureau relies upon the language in the invoice that "[n]o insurance is provided: If premium is not received by the Payment Due Date." We disagree. To be effective, "[a] notice of cancellation ... must be a present cancellation as distinguished from an intention to cancel at a future day." *Malin v. Netherlands Ins. Co.*, 203 Mo.App. 153, 219 S.W. 143, 144 (1920). In other words, it is not sufficient to inform the insured that his policy *will be* canceled; instead, he must be told that his policy *is being* canceled. *Blair*, 118 S.W.3d at 607. The invoice failed to do so. At most, this document simply evinced an intention by Farm Bureau to cancel the Batemans' policy in the future *if* they did not pay the premium installment by the due date. The contin-

gent nature of the language in the invoice prevented it from being an effective cancellation notice. *See Schroeder v. Horack*, 592 S.W.2d 742, 745 (Mo. banc 1979) (a unilateral notice of cancellation must be unequivocal and absolute in order to be effective).

We also take note of the well-established principle that the interpretation placed on a contract by the parties before it becomes a matter of controversy is entitled to great weight in ascertaining their intent and understanding, and the courts will generally follow the parties' own practical interpretation of the agreement. *See Rhoden Inv. Co. v. Sears, Roebuck & Co.*, 499 S.W.2d 375, 383 (Mo.1973); *South Side Realty Co. v. Hamblin*, 387 S.W.2d 224, 229 (Mo.App.1964). The course of conduct between Farm Bureau and the Batemans from April through October 2002 demonstrates that neither the insurer nor the insureds ever treated an invoice as though it was the cancellation notice required by the terms of the policy. If the Batemans did not pay an invoice by the due date, Farm Bureau would send them a reminder notice. By extending the date through which the Batemans could pay the overdue installment and still retain their insurance coverage, the reminder notice directly contradicted the statement in the invoice that no insurance would be provided unless the premium was paid when due. When the Batemans did not make a premium installment payment by the expiration date contained in the reminder notice, Farm Bureau would send them a cancellation notice. The policy would be canceled as of the effective date shown in the reminder notice, rather than

**6.** Policy provisions concerning cancellation are valid unless they conflict with an applicable statute. *Reliance Ins. Co. v. Echols*, 602 S.W.2d 883, 887 (Mo.App.1980). That is not an issue here because Farm Bureau is author-ized by statute to cancel an automobile insurance policy for nonpayment of premium. *See* § 379.114.1(1) RSMo (2000); *O'Connor v. State Farm Mut. Auto. Ins. Co.*, 831 S.W.2d 748, 750 (Mo.App.1992).

the original due date for the premium installment payment.

This is precisely the course of conduct that was followed after the August 26th invoice was mailed to the Batemans. Neither Farm Bureau nor the Batemans treated this document as an absolute and unequivocal notice that policy 977 was canceled. When the Batemans failed to pay the installment premium on policy 977 by the due date, Farm Bureau sent the Batemans a reminder notice and gave them until October 9th to make the payment. Once that deadline passed, Farm Bureau sent the Batemans a cancellation notice. Accordingly, we reject Farm Bureau's argument that policy 977 was effectively canceled by the August 26th invoice. By so holding, we merely follow the practical construction of the insurance policy placed upon it by the parties themselves prior to any controversy arising. *See Rhoden,* 499 S.W.2d at 383; *South Side Realty,* 387 S.W.2d at 229.

 Farm Bureau's next argument is based on the September 20th reminder notice. The insurer contends this document complied with the policy's cancellation provisions because it gave the Batemans more than 10 days notice that policy 977 would be canceled on October 9, 2002 if their premium payment was not received by that date. Farm Bureau's argument fails because the reminder notice suffered from the same infirmity as the invoice. The notice of September 20th merely expressed Farm Bureau's intention to cancel policy 977 *in the future* if the premium installment was not made. Once again, the contingent nature of this document prevented it from being effective as a cancellation notice. As our Supreme Court held in *Blair,* an insurer's unilateral attempt to cancel a policy is not effective unless there is an unmistakable, unequivocal act of cancellation that is not dependent on some

future event. *Blair,* 118 S.W.3d at 607; *see MFA Mut. Ins. Co.,* 381 S.W.2d at 801. A mere intention to cancel in the future is insufficient. *Dyche v. Bostian,* 361 Mo. 122, 233 S.W.2d 721, 724 (1950). Accordingly, the September 20th reminder notice did not constitute an effective notice of cancellation for policy 977.

Farm Bureau's third argument is based on the cancellation notice it mailed to the Batemans on October 10, 2002. The insurer contends this document complied with the policy's cancellation provisions because it notified the Batemans that policy 977 had been canceled as of October 9, 2002. In a bifurcated approach, Farm Bureau asserts that this cancellation notice either was immediately effective when mailed, or it became effective 10 days later. We examine each prong of the argument in turn.

 Farm Bureau's contention that the cancellation notice was immediately effective when mailed is based on the provision of its policy that "[t]he effective date of cancellation stated in the notice will become the end of the policy period." This argument ignores the principle that we must read this provision in the context of the policy as a whole, rather than in isolation. *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 108 (Mo.App.2004); *Hawkeye–Security Ins. Co. v. Davis,* 6 S.W.3d 419, 424 (Mo.App.1999). "Proper interpretation requires that we seek to harmonize all provisions of the policy to avoid leaving some provisions without function or sense." *Kyte v. American Family Mut. Ins. Co.,* 92 S.W.3d 295, 299 (Mo.App.2002). The purpose of the policy provision granting the insured 10 days notice before cancellation takes effect is to give him or her the opportunity to secure replacement insurance coverage from another company. *Hudson v. State Security Ins. Co.,* 555 S.W.2d 859, 861 (Mo.App.

1977). Read as a whole, we are able to harmonize the cancellation provisions in Farm Bureau's policy in the following fashion. At a minimum, the insured is entitled to at least 10 days notice before his or her policy can be unilaterally canceled by the insurer. This is the minimum amount of notice that must be given. The insurer, however, may choose to give its insured more time before the cancellation becomes effective. *See, e.g., Safeco Ins. Co. of America v. Stone & Sons, Inc.*, 822 S.W.2d 565, 567 (Mo.App.1992) (insurer mailed cancellation notice on March 11, 1986 to become effective on April 29, 1986). The provision relied upon by Farm Bureau is intended to permit both the insurer and the insured to ascertain the specific date, at least 10 days in the future, when the notice of cancellation becomes effective. *McGarrah v. Stockton*, 425 S.W.2d 223, 228 (Mo.App.1968). We believe this interpretation of the policy comports with the plain and ordinary meaning of the language used in the cancellation provisions. Accordingly, we reject Farm Bureau's assertion that its cancellation notice was immediately effective when mailed.

▪ The second prong of Farm Bureau's argument is that the October 10th cancellation notice became effective 10 days after it was mailed, which still means policy 977 had been canceled long before the automobile collision occurred on December 23, 2002. The Stones, on the other hand, assert that the specification of an erroneous date of cancellation in the notice rendered it wholly ineffectual. We are persuaded that Farm Bureau's argument is the better-reasoned and correct view. We believe such a holding is required in view of the Supreme Court's decision in

*Blair v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605 (Mo. banc 2003).

In *Blair*, the liability policy at issue required the insurer to give not less than 10 days notice before the cancellation was to take effect if cancellation was for nonpayment of premium. *Id.* at 606. The insured failed to make a quarterly premium payment that was due on October 3, 1998. On October 14, 1998, the insurer mailed a notice to the insured which stated: "THE COVERAGE ON THIS POLICY HAS LAPSED FOR NON–PAYMENT. NO COVERAGE IS BEING PROVIDED AT THIS TIME." *Id.* On October 21, 1998, Heather Blair was injured on the insured's property. The Supreme Court held that the policy provided coverage for Blair's injuries. We find the following quotation apropos to the issue presented by Farm Bureau's first point on appeal:

> The provision here requires nonpayment, notice, and the passage of 10 days—in that order—before cancellation takes effect. Nonpayment occurred on October 3, 1998. Notice of cancellation was sent on October 14. By the terms of the policy, October 24 is the earliest date that cancellation can take effect. The policy was in effect when Heather Blair was injured on October 21, 1998.

*Id.* at 607.

Thus, *Blair* instructs us that a notice of cancellation which purports to be immediately effective, in violation of the terms of the policy, is not a nullity; rather, the notice becomes effective after the lapse of the time period prescribed by the policy. In this regard, *Blair* follows the rule adopted by the overwhelming majority of jurisdictions in the United States.[7] The

---

7. *See, e.g., Ocean Accident & Guarantee Corp. v. Felgemaker*, 143 F.2d 950, 953 (6th Cir. 1944); *Seaboard Mut. Cas. Co. v. Profit*, 108 F.2d 597, 599–600 (4th Cir.1940); *Strickland v. Alabama Farm Bureau Mut. Cas. Ins. Co., Inc.*, 502 So.2d 349, 352 (Ala.1987); *Commercial Union Fire Ins. Co. v. King*, 108 Ark. 130, 156 S.W. 445, 447 (1913); *Am. Glove Co. v.*

same rule has routinely been applied when the notice period is prescribed by statute or regulation.[8] The existence of this general rule is acknowledged by secondary authorities as well. *See, e.g., 2 Couch on Insurance 3d* § 32:52 (Clark Boardman Callaghan 1995); 45 C.J.S. *Insurance* § 498 (1993); 43 Am.Jur. 2D *Insurance* § 420 (2003); *Effect of Attempt to Terminate Insurance or Fidelity Contract upon Notice Allowing a Shorter Period than that Stipulated in Contract,* 96 A.L.R.2d 286 § 3 (1964). The A.L.R. article summarizes the rule thusly:

> While a contrary view obtains in some jurisdictions, most courts are agreed that a notice, otherwise sufficient in form and content, which purports to cancel an insurance or fidelity contract at a time earlier than that permitted under the pertinent cancellation provisions of the contract is not wholly ineffective but serves to cancel the contract and the coverage afforded by it at the expiration of the permitted time.

96 A.L.R.2d 286 § 3 (1964) (footnote omitted). We further agree with another commentator's statement that "[t]his view is reasonable, for the only purpose of the notice to be given by the company upon cancellation is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection, and it finds the support of the majority of the cases." 43 Am. Jur. 2D *Insurance* § 420 (2003). Between the time of the October 10th cancellation notice and the date the accident occurred on December 23, 2002, the Batemans took no steps to secure liability coverage from any other company, though they had ample time to do so. Extending their liability insurance coverage through the end of their policy term, without payment of any additional premium, simply does not comport with the purpose of the notice provision in the policy's cancellation provisions.

In sum, we hold that the October 10th cancellation notice that Farm Bureau mailed to the Batemans became effective on October 20, 2002. As of that point in time, there had been strict compliance with the cancellation provisions in the policy because all three essential events had occurred: nonpayment of premium, notice of cancellation and the passage of at least 10 days. *See Blair,* 118 S.W.3d at 607. Because policy 977 had been canceled long before the accident occurred on December 23, 2002, Farm Bureau provided no coverage to Arlene for the claims asserted

---

*Pa. Fire Ins. Co.,* 15 Cal.App. 77, 113 P. 688, 690 (1910); *Campbell v. Home Ins. Co.,* 628 P.2d 96, 98–99 (Colo.1981); *Jablonski v. Washington County Mut. Fire Ins. Co.,* 13 Ill. App.2d 499, 142 N.E.2d 170, 171–72 (1957); *Moore v. Vernon Fire & Casualty Ins. Co.,* 142 Ind.App. 334, 234 N.E.2d 661, 662–63 (1968); *Perkins v. Battiste,* 469 So.2d 27, 28–29 (La. Ct.App.1985); *McRae v. Mercury Ins. Co.,* 126 Neb. 469, 253 N.W. 645, 646 (1934); *Fritz v. Pa. Fire Ins. Co.,* 85 N.J.L. 171, 88 A. 1065, 1066 (1913); *New York Cent. Employees Albany Dist. Fed. Credit Union v. Commercial Credit Co. of Newark,* 13 Misc.2d 874, 178 N.Y.S.2d 977, 980 (N.Y.Civ.Ct.1958); *Frontier–Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co.,* 166 S.W.2d 746, 747 (Tex.Civ.App. 1942); *State Farm Mut. Auto. Ins. Co. v. Ped-* *erson,* 185 Va. 941, 41 S.E.2d 64, 67–68 (1947).

8. *See, e.g., Commercial Standard Ins. Co. v. Garrett,* 70 F.2d 969, 976 (10th Cir.1934); *Dupree v.Ga. Mut. Ins. Co.,* 188 Ga.App. 857, 374 S.E.2d 546, 547 (1988); *Scanlon v. Empire Fire and Marine Ins. Co.,* 117 Idaho 691, 791 P.2d 737, 740 (Ct.App.1990); *Harrington v. Bremer County Farmers' Mut. Fire Ins. Ass'n,* 203 Iowa 282, 211 N.W. 383, 384 (1927); *Jorgensen v. Knutson,* 662 N.W.2d 893, 900–01 (Minn.2003); *Love v. Motorists Mut. Ins. Co.,* 86 Ohio App.3d 394, 620 N.E.2d 987, 992 (1993); *Ins. Mgmt., Inc. v. Guptill,* 16 Wash.App. 226, 554 P.2d 359, 363 (1976); *Benefit Trust Life Ins. Co. v. Office of the Comm'r of Ins.,* 142 Wis.2d 582, 419 N.W.2d 265, 268–70 (Ct.App.1987).

against her by the Stones. Accordingly, the trial court erred in entering summary judgment against Farm Bureau. Farm Bureau's first point on appeal is granted.

■ Our disposition of the cancellation issue renders the Stones' appeal moot. All of the derivative theories of recovery pled in Counts II–VI of their petition must fail because policy 977 provides no coverage for Arlene. Accordingly, the entry of summary judgment in favor of Farm Bureau on these counts of the petition was correct, albeit for a different reason than that stated by the trial court. Rule 84.14 states, in pertinent part, that an appellate court shall "give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." Accordingly, we reverse the judgment in favor of the Stones. We remand the case with directions to enter a judgment in favor of Farm Bureau. *See Redpath v. Missouri Highway and Transp. Comm'n,* 14 S.W.3d 34, 41 (Mo. App.1999); *Moore Equipment Co. v. Halferty,* 980 S.W.2d 578, 588 (Mo.App.1998).

SHRUM, SR.J., and GARRISON, J., Concur.